NELSON DISTRIBUTING, INC. d/b/a
Loftness Manufacturing, Plaintiff,

v.

STEWART–WARNER INDUSTRIAL BA-
LANCERS, A DIVISION OF STEW-
ART–WARNER CORPORATION, De-
fendant.

No. 3–91 CIV 110.

United States District Court,
D. Minnesota.

Dec. 17, 1992.

Clyde E. Miller, Hector, MN, for plaintiff.

Foley & Mansfield by Russell D. Melton, and Gregory J. Naugle, Minneapolis, MN, for defendant.

## ORDER

ALSOP, Senior District Judge.

The above-entitled matter came before the Court on Friday, October 30, 1992, on defendant's motion for partial summary judgment on plaintiff's fraudulent misrepresentation and consequential damages claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. BACKGROUND

Plaintiff Nelson Distributing, Inc. d/b/a Loftness Manufacturing ("Loftness") is a small manufacturing company located in Hector, Minnesota, that designs, manufactures, and distributes, primarily, snowblowers and crop shredders. Loftness has two production seasons: during the first half of the year, Loftness produces crop shredders; during the second half, snowblowers. Loftness has had success in selling its products; for instance, in 1986 and 1987 Loftness sold every crop shredder it was able to produce during its production season. As a result of this success, Loftness decided to significantly expand its ability to produce a greater number of crop shredders. Part of this expansion involved purchasing an industrial balancer that operated more quickly and accurately than the one Loftness was using.[1]

Towards that end, at the end of the 1988 production season, plaintiff contacted defendant Stewart–Warner Industrial Balancers ("Stewart–Warner"). Approximately one week after this contact, a field representative for Stewart–Warner, George Zintak, discussed plaintiff's needs for a new industrial balancer and made an appointment to meet with Loftness officials at their plant in Hector, Minnesota. Eventually, Loftness made the decision to purchase a Stewart–Warner DA–2000 Industrial Balancer. On September 23, 1988, Mr. Zintak returned to the Hector, Minnesota plant and a purchase order was completed.

A delivery date was set for December 5, 1988. Loftness set the delivery date at that time because it needed the balancer as quickly as possible for their production of crop shredders for the 1989 production season, which would begin at or about the time the balancer was to be delivered.

The Stewart–Warner balancer was not shipped until January 6, 1989. Plaintiff alleges the machine was unable to properly balance any of the Loftness rotors. Stewart–Warner attempted to remedy the alleged defects in the machine until May 4, 1989, when Loftness refused to allow Stewart–Warner to make any further repairs or modifications. Loftness eventually purchased another machine from a Stewart–Warner competitor. In August 1989, Loftness and Stewart–Warner entered into an agreement to release the balancer in order to mitigate damages.

On February 8, 1991, plaintiff commenced this action in Minnesota state court. On February 28, 1991, defendant Stewart–Warner removed the action to federal district court based upon diversity jurisdiction. Plaintiff's complaint contains three counts, alleging causes of action for breach of express warranties and the implied warranty of fitness for a particular purpose, fraudulent misrepresentation, and breach of contract. Defendant's present motion seeks partial summary judgment against Count II, plaintiff's cause of action for fraudulent misrepresentation, and against any claim for consequential damages in the two remaining counts.

## II. STANDARD FOR SUMMARY JUDGMENT

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses which are either factually unsupported or which are based on undisputed facts. *Cel-*

---

1. Loftness uses an industrial balancer to balance the rotor assembly that holds the cutting knives for the crop shredders it produces. The Court has received a great deal of information regarding industrial balancers, how Loftness uses industrial balancers, and the parties' understanding of Loftness' needs for a particular industrial balancer. Because the Court is deciding the present motion as a matter of law, only a brief description of the factual background of the transaction between Loftness and defendant and Loftness' specific needs for an industrial balancer will be provided.

*otex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Hegg v. United States,* 817 F.2d 1328, 1331 (8th Cir.1987). Summary judgment is proper, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The test for whether there is a genuine issue over a material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512; *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir.1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Second, any dispute over material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. It is the non-moving party's burden to demonstrate that there is evidence to support each essential element of his claim. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

## III. DISCUSSION

### A. *Fraudulent Misrepresentation*

■ Count II of plaintiff's complaint states a claim for fraudulent misrepresentation, alleging that Stewart–Warner's salesperson made false statements regarding the performance of the Stewart–Warner industrial balancer upon which plaintiff relied. Defendant moves for summary judgment on this claim, arguing, among other things, that the plaintiff's tort claim of fraudulent misrepresentation is outside the purview of the U.C.C. and is therefore unavailable to plaintiff under *Superwood Corp. v. Siempelkamp Corp.,* 311 N.W.2d 159 (Minn.1981), and *Hapka v. Paquin Farms,* 458 N.W.2d 683 (Minn.1990).

Plaintiff argues that *Hapka*'s ruling does not apply to bar claims of fraudulent misrepresentation and that, even if *Hapka* does bar such a claim, Minn.Stat. § 604.10 revives plaintiff's claim and overrules *Hapka.*

In an attempt to clarify the murky lines between remedies in contract, in tort and under the U.C.C. in cases resulting from commercial transactions, the Supreme Court of Minnesota in *Superwood* held that "economic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence and strict products liability." *Id.* at 162. Thus, under *Superwood,* in cases resulting from commercial transactions, a plaintiff still could recover under the tort theories of negligence and strict products liability for economic losses where there is damage to other property or personal injury. *Superwood* did not directly address whether a plaintiff could recover for economic losses arising out of a commercial transaction under the tort theory of fraudulent misrepresentation where there is damage to other property or personal injury.

In *Hapka,* the Supreme Court of Minnesota overruled the exception in *Superwood* that allowed for recovery under strict liability and negligence for economic losses where there is damage to other property or personal injury. The *Hapka* court expressly distinguished commercial transactions from consumer transactions, stating:

> [T]here is no ... reason in cases of property damage arising out of commercial transactions to keep tort theories of negligence and strict products liability atop those remedies already provided by the U.C.C. ... If the Code is to have any efficacy, parties engaged in commercial activity must be able to depend with certainty on the exclusivity of the remedies provided by the Code in the event of a breach of their negotiated agreement.

*Id.* at 688. Thus, under *Hapka,* a plaintiff may *not* recover for economic losses due to damage to other property or personal injury under the tort theories of negligence

and strict products liability. However, *Hapka* did not address whether a plaintiff could recover for economic losses arising out of a commercial transaction under the tort theory of fraudulent misrepresentation (regardless of whether there was damage to other property or not). The trial court in *Hapka* directed a verdict against plaintiff as to plaintiff's claims for strict liability and negligence as unavailable but did submit a misrepresentation claim to the jury. The *Hapka* court did not address whether it was proper for the trial court to submit the misrepresentation claim to the jury.

In *ETM Graphics, Inc. v. H.B. Fuller Co.*, No. CS–91–2103, slip op. 1992 WL 61394 (Minn.Ct.App. Mar. 25, 1992), the court extended *Hapka*'s reasoning to bar claims for economic loss under the theory of fraudulent misrepresentation. In *ETM Graphics*, plaintiff contracted with the City of St. Paul to install canvas murals at the Como Park Zoo in two phases. *Id.* at 2. Plaintiff purchased fifty gallons of adhesive from defendant H.B. Fuller Co. to install the murals. *Id.* Several months after installation, the adhesive failed and the murals in phase one had to be removed. *Id.* at 3. Plaintiff was paid for phase one but was not hired to perform phase two. *Id.* Plaintiff brought several claims against the adhesive manufacturer, including breach of warranty and fraudulent misrepresentation, and sought as consequential damages, the lost profits that would have been generated by performance of phase two. In other words, plaintiff sought damages for economic losses arising out of a commercial transaction under the tort theory of fraudulent misrepresentation. Plaintiff did not claim economic losses were due to damage to other property or personal injury. The *ETM Graphics* court acknowledged that "the court in *Hapka* did not directly address the issue presented in this appeal," but held "that the broad language in *Hapka* clearly prevents [plaintiff] from bringing a tort action outside the purview of the U.C.C." *Id.* at 4.

▉ This court is not bound to follow the opinion of the Minnesota Court of Appeals in *ETM Graphics*. In the exercise of diversity jurisdiction, federal courts are bound by the decisions of the state's highest court. *Meyer v. Tenvoorde Motor Co.*, 714 F.Supp. 991, 995 (D.Minn.1989), citing to *Kifer v. Liberty Mutual Ins. Co.*, 777 F.2d 1325, 1329 (8th Cir.1985). When state law is unclear or unsettled, "it is the duty of a federal court to apply the rule it believes the state supreme court would follow." *Gearhart v. Uniden Corp. of America*, 781 F.2d 147, 149 (8th Cir.1986) (quoting *Garoogian v. Medlock*, 592 F.2d 997, 1000 (8th Cir.1979)).

▉ In making this determination, a decision of the state intermediate appellate court "is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Meyer*, 714 F.Supp. at 995 (quoting *West v. A.T. & T.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)). In making this determination, a federal court also may consider restatements of law, law review commentaries, and decisions from other jurisdictions on the "majority" rule. *Grantham & Mann, Inc. v. American Safety Prod., Inc.*, 831 F.2d 596, 608 (6th Cir.1987). More recently, the Eighth Circuit has noted that "[a]lthough federal courts are not bound to follow the decisions of intermediate state courts when interpreting state law, state appellate court decisions are highly persuasive and should be followed when the are the best evidence of state law." *Baxter Int'l, Inc. v. Morris*, 976 F.2d 1189, 1196 (8th Cir.1992) (citing *Aetna Casualty and Sur. Co. v. General Dynamics Corp.*, 968 F.2d 707, 712–13 (8th Cir.1992)).

Under the analysis discussed above, the Court must determine whether the extension by the court in *ETM Graphics* of the reasoning in *Hapka* to bar a tort claim for fraudulent misrepresentation in a commercial transaction represents the rule the state supreme court would follow. The reasoning in *Hapka* is broadly worded and is concerned as much with the exclusivity of the U.C.C.'s remedies as it is with the

particular tort theories brought by plaintiff's. Particularly, the court in *Hapka* noted:

> [T]he law is entitled to expect parties to a commercial transaction to be knowledgeable and of relatively equal bargaining power so that warranties can be negotiated to the parties' mutual advantage. Having negotiated the warranties and any limitations of liability, that a defective product causes damage to other property should not defeat the liability parameters that parties have set by opening the door to tort theories of recovery.

*Hapka,* 458 N.W.2d at 688. Although the court in *Hapka* did not specifically address the present issue, this Court believes that the holding in *ETM Graphics* is one that the state supreme court would follow. Thus, this Court concludes that plaintiff's claim of fraudulent misrepresentation is barred by *Hapka* and the extension of that ruling announced in *ETM Graphics.*

The decision that *Hapka* and *ETM Graphics* bar plaintiff's claim does not end the discussion. Plaintiff contends that Minn.Stat. § 604.10 allows plaintiff's present claim of fraudulent misrepresentation and overrules *Hapka.* Minn.Stat. § 604.10 provides:

> (a) Economic loss that arises from a sale of goods that is due to damage to tangible property other than the goods sold may be recovered in tort as well as in contract, but economic loss that arises from a sale of goods between parties who are each merchants in goods of the kind is not recoverable in tort.
>
> (b) Economic loss that arises from a sale of goods, between merchants, that is not due to damage to tangible property other than the goods sold may not be recovered in tort.
>
> (c) The economic loss recoverable in tort under this section does not include economic loss due to damage to the goods themselves.

On its face, the statute does not apply to plaintiff's present claim of economic loss.

Loftness alleges it sustained lost profits of $214,859.40 as a result of its lost sales and lost production of 55–60 machines in its 1989 season. In addition, Loftness alleges that it incurred considerable expenses in replacing the balancer as well as interest expense in the lost profits, and interest expenses on the raw materials carried over and not able to be placed into marketable inventory. Nowhere does Loftness allege economic loss "due to damage to tangible property other than the goods sold." Section 604.10 revives only that exception (announced in *Superwood* and overruled in *Hapka*) that allowed for recovery in tort for economic loss due to damage to other tangible property. Because plaintiff is not claiming economic loss "due to damage to tangible property other than the goods sold," section 604.10 is inapplicable to plaintiff's cause of action for fraudulent misrepresentation.[2] In sum, the Court concludes that plaintiff's claim for fraudulent misrepresentation is barred as a matter of law, and the claim will be dismissed.

### B. *Consequential Damages*

■ Count I of plaintiff's complaint alleges defendant breached express warranties and the implied warranty of fitness for a particular purpose. Paragraph XV of plaintiff's complaint alleges that as a result of defendant's alleged breach of warranties plaintiff sustained consequential damages, classifying these damages as those arising from financing and interest charges on inventory and materials, loss of return on investment, lost profits and the cost of repairing and replacing the balancer.

The Minnesota Commercial Code allows recovery for direct and consequential damages for breach of warranty. Minn.Stat. § 336.2–714. Direct damages are defined as "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." *Id.; see also American Computer v. Jack Farrell Implement,* 763 F.Supp. 1473, 1488 (D.Minn.1991) (citing to *Kleven v. Geigy*

---

2. Because the court finds section 604.10 inapplicable, it need not consider whether section 604.10 applies retroactively to cases pending at its enactment on June 5, 1991.

*Agric. Chems.*, 303 Minn. 320, 227 N.W.2d 566, 569 (1975)). In *Kleven*, the Minnesota Supreme Court defined consequential damages:

> [T]hose that 'do not arise directly according to the usual course of things from the breach of the contract itself, but are rather those which are the consequence of special circumstances known to or reasonably supposed to have been contemplated by the parties when the contract was made.' Direct damages ... arise out of the breach itself; consequential damages [are] damages foreseeably resulting from the breach.

*Kleven*, 227 N.W.2d at 569 (citation omitted). Determining which of plaintiff's claimed damages are consequential is not difficult in this action. In Paragraph XV of the complaint, Plaintiff classifies those damages he believes are consequential, and the Court finds that each of these are properly classified as consequential under the definition provided in *Kleven*.

■■■■ Minnesota law also expressly contemplates that parties to a commercial transaction may modify or limit damages. *See* Minn.Stat. § 336.2–719; *Soo Line R.R. Co. v. Fruehauf Corp.*, 547 F.2d 1365, 1370 (8th Cir.1977) ("It is clear under Minnesota law that parties to a contract may limit or alter the measure of damages recoverable, as by limiting the buyer's remedies to repair and replacement of nonconforming goods or parts."). The exclusion of consequential damages is valid unless such exclusion is unconscionable. Minn.Stat. § 336.2–719(3); *American Computer*, 763 F.Supp. at 1489; *Kleven*, 227 N.W.2d at 572. The question of unconscionability is one for the court to answer. Minn.Stat. § 336.2–302, comment 3.

In the present case, defendant's Express Limited Warranty disclaimed liability for consequential damages arising from breach of warranties. The one-year limited warranty states in pertinent part:

> Stewart–Warner disclaims any liability for consequential damages due to breach of any written or implied warranty on its industrial balancers.

This exclusion allocates the risk of consequential damages in advance in a commercial setting between two experienced businesses. Plaintiff does not argue that the exclusion is unconscionable. In fact, plaintiff itself disclaims liability for consequential damages arising out of the use of its shredders. The Court concludes that under these circumstances the exclusion of consequential damages is not unconscionable and thus is valid as a matter of law. *See American Computer*, 763 F.Supp. at 1489; *Feeders, Inc. v. Monsanto Co.*, No. 4–77–306, slip op. at 3 (D.Minn. May 15, 1981); *Kleven*, 227 N.W.2d at 572. The Court finds plaintiff's other arguments attacking the exclusion of consequential damages without merit, and consequently, defendant's motion for partial summary judgment excluding plaintiff's recovery of consequential damages under its claims for breach of warranties, express and implied, will be granted.

Finally, defendant also moves for partial summary judgment on plaintiff's claim for consequential damages due to breach of contract in Count III, arguing that the damages are unforeseeable, speculative, remote and conjectural. The court finds that genuine issues of material fact exist regarding plaintiff's claim for consequential damages due to breach of contract and will deny defendant's motion.

Accordingly,

Upon review of all the files, records, and proceedings herein,

IT IS HEREBY ORDERED That:

1. The defendant's motion for dismissal of plaintiff's claim for fraudulent misrepresentation in Count II is GRANTED pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the claim is DISMISSED with prejudice; and,

2. The defendant's motion for dismissal of plaintiff's claims for consequential damages arising from plaintiff's claim for breach of express and implied warranties in Count I is GRANTED pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the claims are DISMISSED with prejudice; and,

3. The defendant's motion for dismissal of plaintiff's claim for consequential damages arising from plaintiff's claim for breach of contract in Count III is DENIED pursuant to Rule 56 of the Federal Rules of Civil Procedure.