**VESTA STATE BANK, et al., Respondents,**

v.

**INDEPENDENT STATE BANK OF MINNESOTA, Defendant and Third-Party Plaintiff, Petitioner, Appellant,**

**Clayton Management, Inc., et al., Third-Party Defendants, Respondents.**

No. C6–93–150.

Supreme Court of Minnesota.

June 30, 1994.

Rehearing Denied Sept. 12, 1994.

852

J. Patrick McDavitt and John Troyer, Briggs and Morgan, P.A., Minneapolis, for appellant.

Clarance E. Hagglund and Britton D. Weimer, Hagglund & Weimer, Minneapolis, for respondents.

Gary F. Albrect, Christoffel & Elliott, St. Paul, for third party defendants Clayton Management, Inc.

## OPINION

GARDEBRING, Justice.

This case involves a lawsuit brought by a lessor of agricultural equipment against parties involved in the development of the lease, after default by the lessee. We are asked to decide whether the purchase of an agricultural combine, along with the lessor's interest in the accompanying lease, is the sale of goods or the provision of services. We conclude that this transaction is a sale of goods; therefore, the Uniform Commercial Code's (U.C.C.) four-year statute of limitations governs the claim. We reverse the court of appeals' decision to the contrary. In addition, we affirm the court of appeals' holding that acceptance of a settlement on a personal guaranty does not bar a subsequent suit against other parties that alleges misrepresentation as to the value of the guaranty and the financial reliability of the guarantor. 506 N.W.2d 307.

In November 1981, respondent Vesta State Bank of Minnesota and State Bank of Belview (collectively "Vesta") jointly entered into an agreement with Lease Resources Corporation ("Lease Resources") for the purchase of an agricultural combine and the lessor's interest in an accompanying lease. Lease Resources originated the sale of the combine and lease, prepared the lease documentation, purchased the equipment, entered into a lease with Wendell Klockmann & Sons, Inc. ("Klockmann & Sons"), and then sold the combine and accompanying lease to Vesta. Independent State Bank of Minnesota ("Independent") acted as a broker, arranging for Vesta to engage in the transaction with Lease Resources, and for Clayton Management, Inc. ("Clayton") to manage the lease.[1] Clayton prepared the bill of sale and serviced the lease, collecting rental payments and remitting them to Vesta.

Under the lease terms, Vesta was assigned the lessor's interest in the combine under a five-year lease to Klockmann & Sons. The lessee was obligated to make payments in the total amount of approximately $141,000 and to purchase the combine for $19,600 at the end of the lease. In connection with the lease, Wendell Klockmann ("Wendell"), president of Klockmann & Sons, executed a writ-

1. Independent explained the lease program as follows:

    [Independent] had a correspondent relationship with [Vesta] and various other banks in the State of Minnesota. In several instances, correspondent banks had customers who desired to borrow from them. A lease program, with the correspondent bank purchasing the equipment and leasing it to its customer, was an alternative source of financing. Through tax benefits, including investment tax credit and depreciation, the correspondent bank could often generate a yield on the lease transaction higher than that available in a loan transaction. * * * [Independent] acted as a "finder" in referring correspondent banks to [Clayton and Lease Resources] and in referring lease transactions put together by [Clayton and Lease Resources] to its correspondents as investment vehicles.

ten guaranty, guaranteeing payment and performance of the lease.

In 1983, Klockmann & Sons defaulted on the lease. Clayton, acting as Vesta's agent, sued Klockmann & Sons in California in 1984 to replevin the combine. Clayton obtained possession of the combine and sold it in 1987 for $22,000. For $25,000, Vesta settled claims against Wendell individually to enforce his guaranty.[2]

Vesta filed suit against Independent in Minnesota in April of 1987, alleging that Independent had misrepresented both that the lease was individually guaranteed by Wendell and that Wendell had assets in excess of $2 million. Vesta sought to rescind the transaction and claimed damages for out-of-pocket losses. Independent filed a third-party complaint against Clayton and Lease Resources in July of 1987.

In November of 1987 and again in March of 1988, based on discoveries made as a result of the California litigation, Vesta moved to amend its complaint to assert additional tort and contract claims, including a fraud claim. The trial court denied both motions, the first on the basis that the amended complaint lacked the acknowledgment language required by Minn.Stat. § 549.21 (1986) and that fraud was not pleaded with particularity, and the second on the basis that the amended complaint was barred by the U.C.C.'s four-year statute of limitations.

In September of 1992, Independent moved for summary judgment on the claims in Vesta's original complaint, all of which related to the reliability of Wendell's personal guaranty. Independent argued that Vesta's claims were barred by U.C.C.'s four-year statute of limitations, that Vesta was barred by the election of remedies doctrine because it had settled with Wendell on the guaranty issue in the California lawsuit, and that Wendell's guaranty was enforceable. The trial court granted Independent summary judgment on the election of remedies theory, but denied summary judgment on the alternative grounds that Vesta's complaint was time-

barred or that Wendell's guaranty was enforceable. Vesta appealed both the denial of its motions to amend the complaint and the trial court's grant of summary judgment.

The court of appeals held that the predominant purpose of the transaction was the sale of services, not goods, and that therefore Vesta's claims were not time barred. The court of appeals further held that the trial court erred in denying both Vesta's requests to amend the complaint. Finally, the court of appeals reversed the trial court's holding that Vesta's claims were barred by the doctrine of election of remedies because the California suit involved different parties and alleged different wrongs.

We are asked here to determine whether any of Vesta's claims properly remain before the trial court, or whether they are barred either by the U.C.C.'s four-year statute of limitations or by the election of remedies doctrine. Neither party challenges the court of appeals' determination that the trial court erred in denying appellant's first motion to amend the complaint. Further, the second amendment was denied on the basis of the application of the U.C.C.'s four-year statute of limitations, which we conclude may not bar the fraud-based claims alleged in the amendments. Therefore, we review this matter taking into account the complaint and both the first and second amendments.

■ The role of this court in reviewing summary judgment is to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108 (Minn.1992). Summary judgment is properly granted when there is no genuine issue as to any material fact and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03 (1994).

■ We are first called upon to determine which statute of limitations applies to Vesta's claims, the U.C.C.'s four-year limit, which governs actions involving the sale of goods, or the more general statute of limitations,

---

2. Vesta relied on Clayton to fully represent its interests, and paid all legal fees in the California litigation at a total cost of $35,000. Vesta did not investigate potential claims against Independent, Clayton, or Lease Resources or hire legal counsel, based on this reliance.

854

applicable to the provision of services. Section 2–102 of the U.C.C. specifies that the U.C.C. "applies to transactions in goods." Minn.Stat. § 336.2–102 (1992). The applicable statute of limitations for such "transactions in goods" is provided in Minn.Stat. § 336.2–725 (1992):

> 1) *An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.* By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(Emphasis added). The more general statute of limitations applicable to transactions involving services is six years, according to Minn.Stat. § 541.05, subd. 1(1) (1992).

However, the transaction in this case involves both goods and services. We use the "predominant purpose" test to determine when Article 2 of the U.C.C. applies to hybrid transactions that involve both the sale of goods and the provision of services. *Valley Farmers' Elevator v. Lindsay Bros.*, 398 N.W.2d 553, 556 (Minn.1987), *overruled on other grounds by Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn.1990); *McCarthy Well Co. v. St. Peter Creamery, Inc.*, 410 N.W.2d 312, 315 (Minn.1987). Under the predominant purpose test, a hybrid transaction is classified according to its dominant characteristic. *Valley Farmers'*, 398 N.W.2d at 556; *McCarthy*, 410 N.W.2d at 315.

What then is the dominant characteristic of this hybrid transaction? Vesta argues that the entire purpose behind its purchase of the combine and lease was to obtain investment services and income, and that it had no interest in possessing or using or

owning the combine at the end of the lease period. In support of this argument it points to certain characteristics of the transaction: first, that Vesta obtained a contingent rather than absolute ownership interest in the combine; second, that Vesta was not involved in selecting the combine; and third, that "numerous" lease investment and management services were performed in connection with the transaction.[3]

The court of appeals agreed, characterizing the transaction as the purchase of a lease investment package and concluding that the predominant purpose was the provision of services.[4] The court of appeals' reasoning turned on the nature of the business entities involved in the transaction: Vesta and Belview are bankers and not farmers, and Independent, Clayton, and Lease Resources are in the business of putting together and servicing lease packages, rather than selling farm equipment. The court also found persuasive the argument that the purpose of the transaction was to provide a stream of income, not farm equipment.

We disagree. Irrespective of its characterization of the transaction as the purchase of a stream of income, Vesta became owner of the combine under the bill of sale.[5] Ownership was required for Vesta to claim investment tax credits, depreciation on the combine, and the residual value at the end of the lease. Participation in the selection of the combine is irrelevant to ownership rights, as is the absence of any intent to use the combine to process grain. Finally, the fact that in purchasing the combine and lease, Vesta relied on the lease investment expertise of Independent, Clayton, and Lease Resources does not turn this into a contract for services.

**3.** Vesta claims that Independent, Clayton, and Lease Resources provided the following services in connection with Vesta's purchase of the combine and lease:
  1) recommended equipment leasing as a safe investment,
  2) selected and purchased the combine,
  3) selected and conducted financial investigation of lessee,
  4) completed paperwork to ensure Vesta qualified for investment tax credit,
  5) obtained a personal guaranty from lessee,
  6) debited and credited Vesta's accounts for purchase of lease and lessee's payments,

  7) brought suit for Vesta in California.

**4.** One member of the court of appeals panel dissented, concluding that the contract was for the sale of goods, not the provision of services.

**5.** The Bill of Sale reads in part as follows:

  LEASE RESOURCES CORPORATION ("Seller"), does hereby sell and transfer to Vesta State Bank * * * ("Buyer"), the following described personal property:
  (1) 1981 New Holland TR95 Combine, * * *.

Except for the collection and transmittal of the lease payments and the bringing of the lawsuit in California, all the services provided involved setting up the sale of the combine and lease. We conclude that the predominant purpose of the transaction was the sale of goods, rather the provision of services.

■ Because we find this transaction to be a sale of goods, the U.C.C.'s four-year statute of limitations applies to the contract[6] claims alleged in Vesta's complaint and in the first and second amendments and renders them time barred. However, Vesta's complaint and the amendments also allege claims based on fraud, for which the statute of limitations begins to run only when the aggrieved party discovers the facts constituting the fraud.[7] On this record, we cannot determine whether these claims were made within the statutory period.

■ This court is next asked to decide whether the doctrine of election of remedies bars Vesta's remaining fraud-based claims against Independent and other defendants, because Vesta settled with Wendell in an earlier lawsuit based on his personal guaranty. The doctrine of election of remedies requires a party to adopt one of two or more coexisting and inconsistent remedies which the law affords the same set of facts. The purpose of the doctrine is not to prevent recourse to any particular remedy but to prevent double redress for a single wrong. *Magnusson v. Am. Allied Ins. Co.*, 290 Minn. 465, 472, 189 N.W.2d 28, 33 (1971).

■ However, if inconsistent remedies are sought and it is doubtful which one will bring relief, a party may claim either or both alternatively until one remedy is pursued to a determinative conclusion. *Northwestern State Bank, Osseo v. Foss*, 293 Minn. 171, 177, 197 N.W.2d 662, 666 (1972). Therefore, "a party should not be bound by an election unless he has pursued the chosen course to a

determinative conclusion or has procured advantage therefrom, or has thereby subjected his adversary to injury." *First Nat'l Bank of Osakis v. Flynn*, 190 Minn. 102, 107, 250 N.W. 806, 808 (1933).

Vesta argues that the present claims are fully consistent with the California settlement in the case against Wendell to recover on his personal guaranty. In contrast, the instant matter seeks recovery against certain business entities on the theory that they misrepresented the reliability of the guarantor and his guaranty, and that they were negligent in obtaining the guaranty. Thus, Vesta urges, the election of remedies doctrine is not applicable because there is no risk of double recovery. In further support of its position, Vesta cites the California settlement that, according to its terms, "represents a compromise of disputed claims [which] should not be construed as an admission by any party of any liability or of any contention or allegation made by any other party."

Independent argues that by accepting a settlement with Wendell on the guaranty, Vesta acknowledged its enforceability, and therefore cannot now contend that the defendants in this matter misrepresented the value of the guaranty, or negligently failed to obtain an adequate guaranty.

The court of appeals held that Vesta is not barred by the election of remedies doctrine. The court of appeals reasoned that in this case there is no double redress for a single wrong because the California suit against Wendell was based on Wendell's failure to pay his obligation under the guaranty. The Minnesota suit against Independent, Clayton, and Lease Resources, different parties, focused on their failure to obtain a valid guaranty and on misrepresentations regarding the guaranty, different actions. We agree, except to the extent that the current action seeks rescission of the contract.

---

6. While certain of the claims are characterized as negligence claims, they appear to be merely reiterations of the fraud claims. We leave the ultimate characterization of these claims to the trial court on remand.

7. We have not previously applied this rule to fraud-based causes of action arising in transactions governed by the U.C.C. However, in light of Minn.Stat. § 336.2–725(4) (1992) which says that the U.C.C. statute of limitations "does not alter the law on tolling of the statute of limitations," there appears to be no reason why it should not be extended to such matters.

In the California litigation, Vesta sought to recover what it could on Wendell's guaranty, although Wendell contested its enforceability against him personally. There is nothing logically or legally inconsistent in the theory of the California lawsuit, that Wendell is liable on his guaranty, and the theory of the misrepresentation claims against Independent, Lease Resources and Clayton, that the guaranty was inadequate and not as represented. The parties are different, and the claims are distinct and require proof of quite different facts. We have not historically applied the election of remedies doctrine in cases involving "separate contractual obligations between different parties," *Magnusson*, 290 Minn. at 473, 189 N.W.2d at 33, or "successive and distinct torts," *Lloyd v. Farmers Co-op. Store of Cleveland, Minn.*, 197 Minn. 387, 267 N.W. 204, 205 (1936). We agree with the Wisconsin Supreme Court that, "[w]here more than one remedy exists to deal with a single subject of action, but they are not inconsistent, nothing short of full satisfaction of the plaintiff's claim waives any of such remedies." *Wiebke v. Richardson & Sons*, 83 Wis.2d 359, 265 N.W.2d 571, 574 (1978). Furthermore, there is no risk of a double recovery if the fraud-based claim is not barred. The California settlement amount, $25,000, is significantly less than the claimed damages in this matter, and should be treated as an offset by the trial court in any subsequent recovery by Vesta.

Finally, we note that there is an inconsistency between the rescission count of the first amended complaint and the California settlement, and thus the rescission count is barred by election of remedies. Vesta recovered damages from the guarantor; rescission of the contract is therefore an inconsistent remedy. *See Anders v. Dakota Land & Dev. Co.*, 289 N.W.2d 161 (Minn.1980).

In summary, we conclude that the contract claims of Vesta are barred by the application of the U.C.C.'s four-year statute of limitations; however, the fraud claims alleged in Vesta's amended complaints may not be barred because of the tolling of the statute of limitations. Because we are unable to calculate, based on the record before us, when such claims accrued, that determination is left for the trial court on remand. The rescission count of the amended complaint is barred by the California settlement.

Reversed in part, affirmed in part and remanded.