**AKA DISTRIBUTING COMPANY,**
Plaintiff,

v.

**WHIRLPOOL CORPORATION,**
Defendant.

Civil No. 4–93–1238.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 29, 1996.

Thomas J. Lyons, Mary C. Ivory, and Lyons, Sawicki, Neese & Phelps, St. Paul, MN, and Thomas E. Boland, and Boland Law Office, Great Falls, MT, for plaintiff.

Keith A. Hanson, and Fetterly & Gordon, Minneapolis, MN, and Robert F. James, and James, Gray & McCafferty, Great Falls, MT, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion for summary judgment. Based on a review of the file, record and proceedings herein, the court grants defendant's motion.

## BACKGROUND

Defendant Whirlpool Corporation ("Whirlpool") is a Delaware corporation with its principal place of business in a state other than Minnesota. Plaintiff AKA Distributing Company ("AKA") is a Minnesota corporation with its principal place of business in Bloomington, Minnesota. Alan Allstadt is the chief operating officer of AKA, doing business as Al's Vacuum & Janitorial Supply, Inc. Allstadt and his wife have been in the vacuum cleaner business since 1974. In February 1985, AKA and Whirlpool signed an "Associate Distributor Sales Agreement" whereby AKA, as the associate distributor, was authorized to sell Whirlpool brand floor-care products at locations in Minnesota, North Dakota, South Dakota, and certain locations in Wisconsin. Under the agreement, Whirlpool was to provide services such as advertising and promotional support, product and sales training meetings, and display materials, "for the purpose of enabling the Associate Distributor to aggressively promote the sales of Whirlpool products." The Distributor Sales Agreement included a provision describing ways in which the agreement could be terminated by the parties, otherwise the agreement would end by its own term on April 1, 1986. Also in February 1985, AKA and Whirlpool executed a "Sales and Security Agreement," whereby title to the products passed to AKA immediately prior to AKA's possession, and Whirlpool retained a purchase money security interest in the property. In addition, the parties executed a U.C.C.–1 Financing Statement. After April 1, 1986, the parties continued their relationship without an additional writing.

AKA asserts that during the course of the parties' relationship, Whirlpool made assurances that Whirlpool was going to remain in the floor-care business and that the duration of the distributorship would continue into the future. On January 6, 1988, Whirlpool announced that it would discontinue the Whirlpool brand of floor-care product effective April 1, 1988. AKA asserts that during the years 1982 and 1983 Whirlpool established a goal to develop an exclusive line of floor-care product for Sears by the year 1987. AKA alleges that Whirlpool established the distributorships in order to seat the vacuum cleaners into the market place and to develop the product so that it would be acceptable to Sears. On December 29, 1993, AKA filed a complaint against Whirlpool alleging fraudulent misrepresentation, constructive fraud, negligent misrepresentation, breach of implied covenant of good faith, breach of contract, promissory estoppel, violations of Minnesota Statute § 325D.04, and tortious interference with contract.

By order dated April 16, 1996, this court denied plaintiff's motion for partial summary judgment on the breach of contract claim. This court also granted in part, and denied in part defendant's motion for summary judgment. The claims which remain before the court are plaintiff's claims for breach of contract, fraudulent misrepresentation, constructive fraud, and negligent misrepresentation.

The issue of whether the parties' relationship is governed by the Uniform Commercial Code was raised at the hearing on the April summary judgment motion, but was not addressed in the court's order. At the hearing on the parties' motions in limine, the issue of whether the relationship was governed by the Uniform Commercial Code was again raised. The defendant also reasserted the affirmative defense of the statute of limitations which was first raised in its answer and again in the pre-trial submissions. Determining that it would be prudent to resolve these issues before trial, the court agreed to consider defendant's motion for summary judgment and requested briefing on the motion.

Whirlpool asserts that the parties' agreement was governed by the Uniform Commercial Code because the predominant characteristic of the parties' agreement was the sale of goods. Whirlpool urges that the breach of contract claim is thus barred by the U.C.C.'s statute of limitations. In addition, Whirlpool argues that the parties had a commercial relationship whereby damages for economic loss are limited to contract remedies, thus barring AKA's tort claims.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires the trial judge to direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. at 2512.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court considers the defendant's motion for summary judgment.

Article 2 of the Uniform Commercial Code ("U.C.C."), codified at sections 336.2–101 through 336.2–725 of the Minnesota Statutes, applies to transactions in goods. Minn.Stat. § 336.2–102. "Goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale...." Minn.Stat. § 336.2–105. When an agreement involves both goods and services, Minnesota courts use the "predominant purpose" test to determine whether the hybrid transaction is governed by the U.C.C. as a contract for the sale of goods. *See Vesta State Bank v. Independent State Bank*, 518 N.W.2d 850 (Minn. 1994); *Valley Farmers' Elevator v. Lindsay Bros. Co.*, 398 N.W.2d 553, 556 (Minn.1987), *overruled on other grounds, Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn.1990). Under this test, a hybrid transaction is classified according to its dominant characteristic. *Vesta State Bank*, 518 N.W.2d at 854; *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir.1974) (stating that the test is not whether the contracts are mixed, but, "granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably

stated is the rendition of service, with goods incidentally involved ... or is a transaction of sale, with labor incidentally involved"). The determination of whether goods or services predominate is generally a question of law. *See Valley Farmers' Elevator,* 398 N.W.2d at 556.

■ As stated in this court's order dated April 16, 1996, factual disputes exist as to the terms of the parties' agreement. However, even considering AKA's assertions that Whirlpool was using AKA for its services, namely to seat the product into the marketplace and to aid in the creation of a product which would be acceptable to Sears, the court concludes that the services were incidental to the sale of vacuum cleaners. For the purposes of this motion, the court need not resolve the exact terms of the parties' agreement, since any services alleged by AKA essentially involve preparing the sale of vacuum cleaners. *See Vesta State Bank,* 518 N.W.2d at 855; *see also Monetti, S.P.A. v. Anchor Hocking Corp.,* 931 F.2d 1178, 1184 (7th Cir.1991) (recognizing that predominant purpose of distributorship agreements and contracts for sale is the sale of goods); *De Filippo v. Ford Motor Co.,* 516 F.2d 1313, 1323 (3d Cir.1975) (considering the totality of circumstances when analyzing predominant purpose); *Kirby v. Chrysler Corp.,* 554 F.Supp. 743 (D.Md.1982) (noting clear majority of courts hold that distributorship agreements are governed by the provisions of the Uniform Commercial Code). Despite AKA's reference to servicing the product and aiding Whirlpool in the development of the product, it is clear that the predominant goal of both Whirlpool and AKA was to sell vacuum cleaners.

■ Having determined that the parties' agreement is governed by the U.C.C., the court applies the four-year statute of limitations to the breach of contract claim, rather than the general statute of limitations applicable to a contract for the provision of services. *See* Minn.Stat. § 336.2–725 (providing that an action for the breach of any contract for sale of goods must be commenced within four years after the cause of action has accrued); Minn.Stat. § 541.05 (providing a six-year statute of limitations).

A cause of action accrues when the breach occurs. Minn.Stat. § 336.2–725(2). In this instance, Whirlpool announced in January 1988 that it would no longer continue to produce floor-care products under the Whirlpool brand, effective April 1, 1988. AKA filed its complaint against Whirlpool in December 1993, more than four years after both the announcement and the effective date for termination of production. Thus, the court concludes that AKA's breach of contract claim is barred by the statute of limitations.

■ The parties dispute the effect that the application of the U.C.C. has on AKA's tort claims. The defendant argues that the parties' relationship involved commercial transactions, and as such, the rights and remedies of the parties are limited to the law of contracts. The Minnesota Supreme Court has recognized with respect to commercial transactions that the U.C.C. is a "'complete and independent statutory scheme enacted for the governance of all commercial transactions ... [and] is intended to displace tort liability.'" *Board of Regents v. Chief Industries, Inc.,* 907 F.Supp. 1298, 1301 (D.Minn. 1995) (quoting *Hapka v. Paquin Farms,* 458 N.W.2d 683, 688 (Minn.1990)). The Minnesota Supreme Court further stated that "[i]f the Code is to have any efficacy, parties engaged in commercial activity must be able to depend with certainty on the exclusivity of the remedies provided by the Code in the event of a breach of their negotiated agreement." *Hapka,* 458 N.W.2d at 688; *see also,* Minn.Stat. 604.10 (providing that "[e]conomic loss that arises from a sale of goods, between merchants, that is not due to damage to tangible property other than the goods sold may not be recovered in tort"). The scope of the Minnesota Supreme Court's decisions and the application to tort claims other than claims for negligence or strict products liability is not clear. When the state's Supreme Court has not addressed an issue, the federal court must determine what the state's highest court would probably hold were it to decide the issue. *Toney v. WCCO Television, Midwest Cable and Satellite, Inc.,* 85 F.3d 383, 389 (8th Cir.1996). With such task, the court considers the issue.

In *Nelson Distributing, Inc. v. Stewart–Warner Industrial Balancers,* 808 F.Supp. 684 (D.Minn.1992), the court interpreted Minnesota law and held that the plaintiff's claim for fraudulent misrepresentation, which alleged that defendant's salesperson made false statements regarding the performance of the good, was barred as being outside the purview of the U.C.C. and therefore unavailable to plaintiff under the rule articulated in *Superwood Corp. v. Siempelkamp Corp.,* 311 N.W.2d 159 (Minn.1981), and *Hapka v. Paquin Farms,* 458 N.W.2d 683 (Minn.1990). In *Nelson,* Judge Alsop recognized that the Minnesota Supreme Court's decisions had not addressed "whether a plaintiff could recover for economic losses arising out of a commercial transaction under the tort theory of fraudulent misrepresentation (regardless of whether there was damage to other property or not)." *Id.* at 687. The court referred to the Minnesota Court of Appeals decision in *ETM Graphics, Inc. v. H.B. Fuller Co.,* No. CS–91–2103, slip op. 1992 WL 61394 (Minn.Ct.App. Mar. 25, 1992), which extended the rationale of *Hapka* to bar a tort claim for fraudulent misrepresentation in a commercial transaction. Recognizing the expectations of parties to a commercial transaction and their equal bargaining power to negotiate warranties, Judge Alsop concluded that "[t]he reasoning in *Hapka* ... is concerned as much with the exclusivity of the U.C.C.'s remedies as it is with the particular tort theories brought by plaintiffs." *Nelson,* 808 F.Supp. at 687–88; *but see Clements Auto Co. v. Service Bureau Corp.,* 444 F.2d 169, 180 (8th Cir.1971) (deciding that the Uniform Commercial Code did not alter the Minnesota law of fraud); *Northern States Power Co. v. International Telephone and Telegraph Corp.,* 550 F.Supp. 108, 111–12 (D.Minn.1982) (refusing to extend the rule barring tort claims to bar claims for misrepresentation and fraudulent inducement to contract); Minn.Stat. § 336.1–103 ("Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to ... fraud, misrepresentation ... or other validating or invalidating cause shall supplement its provisions"); Minn.Stat. § 336.2–721.

In *Northern States Power v. International Telephone and Telegraph Corp.,* 550 F.Supp. 108 (D.Minn.1982), the court interpreted Minnesota law and determined that, while it was arguable that recovery for merely negligent misrepresentation is not permitted in light of the Minnesota Supreme Court precedent, claims for misrepresentation and fraudulent inducement to contract are distinct torts, separate from a breach of contract claim. *Id.* at 112. Assuming that fraudulent misrepresentation and constructive fraud are viable claims, the court concludes in this instance that AKA has not alleged claims independent of the breach of contract claim. In *Huron Tool v. Precision Consulting Serv.,* 209 Mich.App. 365, 532 N.W.2d 541 (1995), the court relied on *Northern States Power* in determining that a claim based on fraud may stand notwithstanding the exclusivity of contract remedies under "the economic loss doctrine." However, the *Huron* court determined that the plaintiff's fraud claim was not viable apart from the contract claim since the fraudulent representations were indistinguishable from the terms of the contract and warranty that plaintiff alleged were breached. *Id.* 532 N.W.2d at 546. Because plaintiff failed to allege wrongdoing extraneous to the contractual dispute, plaintiff was restricted to its contractual remedies under the U.C.C. *Id.; see also Standard Platforms, Ltd. v. Document Imaging Systems Corp.,* No. Civ. 93–20993 SW, slip op. 1995 WL 691868 (N.D.Cal. November 15, 1995) (concluding that the "economic loss" limitation barred fraud claims that are subsumed within contractual obligations).

In this instance, AKA's tort claims are inseparable from its breach of contract action. Both the tort claims and the breach of contract claim pertain to Whirlpool's alleged assurances as to the duration of the parties' agreement. AKA has failed to allege claims independent of the performance of the contract, in particular as to the duration of the distributorship relationship. Rather, the tort claims and contract claim are indistinguishable.

Thus, under *Nelson,* AKA's tort claims are barred by an application of the economic loss rule pronounced in *Superwood* and *Hapka.*

Similarly, under *Northern States Power*, AKA's tort claims are barred in that they fail to assert claims independent of the performance of the contractual terms of the parties' agreement, namely the duration of the agreement.

Plaintiff argues that its tort claims should be allowed to go forward because the cases which defendant relies upon as foreclosing tort claims involved defective products, whereas the plaintiff's claims in this case do not involve allegations of defective vacuum cleaners. In essence, AKA asserts that its tort claims pertain solely to Whirlpool's conduct. The court is unpersuaded by this argument. Although the limitation of recovery for economic loss has been applied primarily to cases involving a breach of the warranty term, the court concludes that such a restrictive interpretation is unwarranted considering the ability of the parties in a commercial transaction to negotiate their contractual terms.

## CONCLUSION

Because the parties' transactions are governed by the Uniform Commercial Code, the court concludes that AKA's breach of contract claim is barred by the U.C.C.'s four-year statute of limitations. In addition, the court concludes that AKA's tort claims are barred since the parties allege economic loss arising from a commercial transaction and because AKA has failed to assert tort claims separate from the breach of contract claim. Accordingly, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment is granted. Plaintiff's claims for breach of contract, fraudulent misrepresentation, constructive fraud, and negligent misrepresentation are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**