**Marion NIMIS, et al., Appellants,**

v.

**ST. PAUL TURNERS, et al., Respondents.**

No. C4–94–223.

Court of Appeals of Minnesota.

Sept. 6, 1994.

Lewis A. Remele, Jr., Kevin P. Hickey, Minneapolis, for appellants.

Robert G. Haugen, Johnson & Lindberg, P.A., Minneapolis, for respondents.

Considered and decided by SHORT, P.J., and PARKER and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Marion Nimis was a member of the St. Paul Turners health club when she was injured during a stretching demonstration. She and her husband, Gerard Nimis, sued the club. The club moved for summary judgment but the trial court denied the motion. The case went to trial and the jury, by special verdict, found that a term waiving liability from a previous membership contract was effective, apportioned fault, and determined damages.

The Nimises moved for JNOV on the waiver and comparative fault issues, and moved in the alternative for a new trial. The trial court granted their motion for JNOV on the waiver issue, denied their motion on comparative fault, and denied their motion for a new trial. Both parties have appealed. We affirm.

## FACTS

In late November 1989, Marion Nimis joined the St. Paul Turners health club (Turners). As part of her membership contract, she signed a waiver releasing Turners from liability for any injury. Memberships at Turners extend from January through the end of December, and her membership expired on December 31, 1989. During 1990, she did not renew her membership. In early 1991, she rejoined the club, but was not asked to sign a waiver at that time. Turners's policy was to have members sign a new waiver when they reapplied for membership after a gap in years.

In March 1991, a volunteer trainer of the club asked Marion to assist him in demonstrating a stretching exercise. He had her stand next to him and lift her leg as far as she could. He then cupped his hand under her leg and lifted it further. She testified she told him he had lifted her leg far enough, but that he lifted further. The trainer testified he did not remember what actually occurred or her saying anything.

Marion felt pain after the stretching demonstration, and left the club early to go home. Her leg got progressively worse over the following weeks, and she sought medical attention. After several visits to the doctor and several physical therapy sessions, she was diagnosed with having reflexive sympathetic dystrophy syndrome (RSDS), a disabling neurological disorder. She underwent treatment for several years in an attempt to stop her leg's deterioration. The results of the treatment were mixed, and her prognosis is unfavorable.

The Nimises sued Turners, seeking damages for past and future medical expenses, pain and suffering, loss of earnings, and loss of consortium. Because Marion was not able to work for the family business as she had before, they also sought lost profits.

Turners moved for summary judgment, arguing the waiver precluded recovery. The trial court denied this motion, and a jury trial was held. At trial the Nimises sought to offer testimony from Gerard Nimis regarding expected profits before the accident and actual profits after the accident in order to show lost profits. The trial court, however, held that lost profits was not a proper form of damages in a personal injury action, and that the evidence was speculative. The court limited evidence to Marion's loss of earning capacity. The jury by special verdict found that the waiver was in effect at the time of the injury. The jury also found St. Paul Turners 60% at fault, Marion Nimis 40% at fault, and awarded damages.

The Nimises moved for JNOV on the waiver issue, and the trial court granted this motion. They also moved for JNOV on the issue of Marion Nimis's comparative fault. The trial court denied this motion. The Nimises moved in the alternative for a new trial, but the trial court denied this motion.

The Nimises appeal from the denial of their motion for a new trial, and the denial of JNOV on the issue of comparative fault. St. Paul Turners filed a notice of review of the trial court's denial of their summary judgment motion, and from the trial court's grant

of JNOV on the waiver issue. Because these arguments are inter-related, there are only two issues on appeal. We affirm.

## ISSUES

1. Did the trial court abuse its discretion in denying the Nimises' motion for a new trial?

2. Did the trial court abuse its discretion in denying the Nimises' motion for JNOV in the issue of comparative fault?

## ANALYSIS

### I.

*New Trial*

The Nimises argue that because of the cumulative effect of alleged errors at trial, the district court abused its discretion in not awarding them a new trial. A trial court's decision to grant or deny a motion for a new trial will not be disturbed on appeal absent a clear abuse of discretion. *Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346, 352 (Minn.1981).

### A. Waiver Issue.

The Nimises first argue that the issue of whether the waiver was in effect was a question of law that should not have been presented to the jury. Turners also argues that the issue is one of law, and that it should have been granted summary judgment before trial.[1] Where there is evidence that reasonably tends to show the existence of a question of fact, the court may submit the issue to the jury. *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn.1984).

The trial court held that the waiver was unambiguous and not overbroad. It held the original contract was discharged through performance, and that Turners's argument that the contract continued beyond the original membership period was not supported by law. The court denied Turners's motion for summary judgment, holding that although

the waiver contract expired at the end of 1989, there was a genuine issue of material fact as to whether the waiver contract was implicitly incorporated into the 1991 membership.

The trial court presented to the jury the issue of whether the waiver was still in effect on the date of injury. The Nimises argue that the waiver should be construed strictly against Turners, and that the waiver is unenforceable because it purports to release Turners from liability other than negligence.

Minnesota recognizes the validity of, but does not favor, exculpatory clauses. *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn.1982). The rule of strict construction is applied against the drafter of exculpatory clauses and courts will not enforce clauses that are ambiguous in scope or that attempt to release a party from liability "for intentional, willful or wanton acts." *Id.* Whether a contract provision is ambiguous is a question of law. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982).

Here the waiver states:

the undersigned:

\* \* \* \* \* \*

Release, waive, discharge and covenant not to sue *St. Paul Turners* its affiliated clubs, their respective administrators, directors, agents, coaches, and other employees of the organization, other participants, sponsoring agencies, sponsors, advertisers, and if applicable, owners and leasers of premises used to conduct the event, all of which are hereinafter referred to as "releasees", from demands, losses or damages on account of injury, including death or damage to property, caused or alleged to be caused in whole or in part by the negligence of the releasee or otherwise.

Neither party disputes that the issue of whether the waiver was effective on the date of injury is a question of law. In the waiver, Marion Nimis agreed to release Tur-

---

1. Turners, however, at the same time argues that:

> The determination whether the contract was still in effect at the time of the injury is fact-laden. While it is difficult to point to specific

testimony that, of itself, creates a fact question, it is obvious that the totality of the circumstances bearing on the issue of intent is nothing but factual.

ners from liability for injuries "caused or alleged to be caused in whole or in part by the negligence of the releasee or otherwise." The language "or otherwise" is ambiguous in scope as to whether it releases Turners for injuries caused intentionally, and therefore we will not enforce it. *See Schlobohm*, 326 N.W.2d at 923.

■ In addition, the waiver unambiguously expired at the end of Marion Nimis's first membership contract and was not incorporated in the second membership contract. Where a contract is unambiguous and complete, there is no room for construction. *North Star Ctr, Inc. v. Sibley Bowl, Inc.*, 295 Minn. 424, 426, 205 N.W.2d 331, 332 (1973); *Indianhead Truck Line v. Hvidsten Transp., Inc.*, 268 Minn. 176, 183, 128 N.W.2d 334, 340 (1964).

■ The starting date for Marion Nimis's membership was in November 1989. The ending date was December 31, 1989. The waiver was on a separate paper signed contemporaneously. The waiver contract itself did not contain either a starting or an ending date. But this waiver contract was an integral part of the membership contract and thus would be of the same duration unless specific language designated otherwise. *See Country Club Oil Co. v. Lee*, 239 Minn. 148, 151, 58 N.W.2d 247, 249 (1953) (contract read as a whole).

Marion Nimis had no ability to waive any rights or acquiesce to any terms with Turners until the parties had a contract. Precedent and common sense tells us the waiver expired at the termination of the underlying contract, as no other date was stated. If the club intended the waiver to be perpetual and to extend to any and all renewals, including non-consecutive renewals as here, it could easily have so stated. It did not. The facts are undisputed that the new membership was not accompanied by a new waiver. There was no reference to the former waiver, and Turners's policy was to have its members sign a new waiver when they reapplied for membership after a gap in membership, meaning, non-consecutive years.

■ The membership contracts here are unambiguous and complete. *See Indianhead Truck Line*, 268 Minn. at 183, 128 N.W.2d at 340. We find as a matter of law that the waiver in the first membership contract expired on December 31, 1989, and was not incorporated in the second membership contract in 1991. Therefore, Marion Nimis was not subject to any waiver at the time of her injury.

■ Although the trial court erred in presenting the waiver issue to the jury, it corrected the error by granting JNOV on the issue. The Nimises argue that the trial court's grant of JNOV was insufficient to correct the prejudice. We disagree. The jury could logically find negligence while at the same time it considered whether the waiver was in effect. The trial court did not abuse its discretion in denying the Nimises' motion for a new trial.

Because we conclude JNOV was proper, we need not address the Nimises' alternative arguments on this issue. Furthermore, our analysis also answers Turners's argument on the trial court's denial of its summary judgment motion and its grant of JNOV on this issue. Because we conclude as a matter of law the waiver was not in effect on the date of the accident, the trial court correctly denied the summary judgment motion.

## B. Exclusion of Economic Loss Evidence

■ The Nimises next argue that the trial court's exclusion of evidence of lost income and lost profits constitutes an abuse of discretion. The decision to admit evidence is within the discretion of the trial court. *In re Conservatorship of Torres*, 357 N.W.2d 332, 341 (Minn.1984). The trial court held that because the sales of the company's one product, statistical software, could disappear overnight at the whim of its major clients, or because of technological changes, the profit estimates from before the accident were speculative. The trial court was within its discretion in so holding. *See Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983) (trial court's decision on admissibility of evidence will only be reversed for an abuse of discretion).

## II.

*Comparative Fault*

 The Nimises argue in the alternative that the trial court erred in not granting JNOV on the issue of comparative fault. A motion for JNOV "admits every inference reasonably to be drawn from the evidence as well as the credibility of the testimony for the adverse party." *Seidl v. Trollhaugen, Inc.,* 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975). Granting JNOV is improper unless the evidence is "practically conclusive against the verdict." *Id.* The trial court correctly denied the Nimises' motion for JNOV on this issue. The jury could reasonably infer that Marion did not exercise due care in not speaking up immediately when she felt uncomfortable, or in other ways contributed to her own injury. On the facts, the 40% finding against her is generous to Turners, but a trial jury is accorded wide latitude on issues of negligence and apportionment of comparative fault.

### DECISION

The trial court did not err in denying Turners's motion for summary judgment. Although the trial court erred in presenting to the jury the issue of whether the waiver was effective, it remedied the error by granting JNOV for the Nimises. The jury's apportionment of fault is supported by the record. The trial court did not abuse its discretion in denying the Nimises' motion for JNOV on this issue.

**Affirmed.**