Tammey J. ANDERSON, f/k/a Tammey J. Blazjak, et al., Appellants,

v.

McOSKAR ENTERPRISES, INC. d/b/a Curves for Women, Respondent.

No. A05–1546.

Court of Appeals of Minnesota.

May 2, 2006.

Amy L. Baumgarten, Martin T. Montilino, Borkon, Ramstead, Mariani, Fishman & Carp, Minneapolis, MN, for appellants.

Patrick J. Sauter, Kathleen M. Daly, Rider Bennett LLP, Minneapolis, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge; SHUMAKER, Judge; and DIETZEN, Judge.

## OPINION

SHUMAKER, Judge.

When appellant registered to become a member of respondent health and fitness club, she signed a release of liability of the club for injuries from "any act or omission, including negligence." Appellant was injured and sued respondent for damages for negligence. Respondent moved for summary judgment on the ground that appellant had released it from liability for negligence. The district court granted the motion. Appellant contends that the release is unenforceable because it is ambiguous in scope and contravenes public policy. The district court did not err in granting summary judgment.

## FACTS

Respondent McOskar Enterprises, Inc. owns and operates a fitness and health club in Monticello known as "Curves for Women." Appellant Tammey J. Anderson joined the club on April 2, 2003.

As part of the registration requirements, Anderson read an "AGREEMENT AND RELEASE OF LIABILITY," initialed each of the three paragraphs in the document, and dated and signed it. The first paragraph purported to release Curves from liability for injuries Anderson might sustain in participating in club activities or using club equipment:

> In consideration of being allowed to participate in the activities and programs of Curves for Women® and to use its facilities, equipment and machinery in addition to the payment of any fee or charge, I do hereby waive, release and forever discharge Curves International

Inc., Curves for Women®, and their officers, agents, employees, representatives, executors, and all others (Curves® representatives) from any and all responsibilities or liabilities from injuries or damages arriving [sic] out of or connected with my attendance at Curves for Women®, my participation in all activities, my use of equipment or machinery, or any act or omission, including negligence by Curves® representatives.

The second paragraph provided for Anderson's acknowledgment that fitness activities "involve a risk of injury" and her agreement "to expressly assume and accept any and all risks of injury or death."

After completing the registration, Anderson began a workout, primarily with machines, under the supervision of a trainer. About 15 or 20 minutes later, having used four or five machines, Anderson developed a headache in the back of her head. She contends that she told the trainer, who suggested that the problem was likely just a previous lack of use of certain muscles and that Anderson would be fine.

Anderson continued her workout and developed pain in her neck, shoulder, and arm. She informed the trainer but continued to exercise until she completed the program for that session.

The pain persisted when Anderson returned home. She then sought medical attention, eventually had a course of physical therapy, and, in June 2003, underwent a cervical diskectomy. She then started this lawsuit for damages, alleging that Curves had been negligent in its acts or omissions during her workout at the club.

Curves moved for summary judgment on the ground that Anderson had released the club from liability for negligence. The district court agreed and granted the motion. Anderson challenges the court's ruling on appeal.

## ISSUE

A fitness club required members to sign a release of liability of the club for "any act or omission, including negligence," causing injury to a member. Appellant signed the release and thereafter was injured while using club equipment. She contends that the release is unenforceable because it is ambiguous in scope and it is a contract of adhesion that contravenes public policy.

Is the release legally enforceable?

## ANALYSIS

█ Anderson contends that there exist genuine issues of material fact both as to negligence and the release that she signed. But it is the question of the enforceability of the release that is dispositive. Anderson argues that the release is ambiguous in scope and, therefore, unenforceable, and that it is also a contract of adhesion violative of public policy.

Anderson's arguments about the release do not point to material facts in dispute. In her deposition, she admitted that she read the release before she signed it, that she placed her initials next to each of the three paragraphs in the document, and that she agreed to all conditions stated in the release. Although she testified that she did not understand all of the content of the release, she did not specify any particular part that she failed to understand, and she reiterated in response to a question that, by signing the release, she agreed to it. Furthermore, she does not claim that Curves committed any wanton, willful, or intentional act that caused or contributed to her injury, alleging in her complaint only that Curves was negligent.

*Releases*

█ It is settled Minnesota law that, under certain circumstances, "parties to a contract may, without violation of public

policy, protect themselves against liability resulting from their own negligence." *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 922–23 (Minn.1982). The "public interest in freedom of contract is preserved by recognizing [release and exculpatory] clauses as valid." *Id.* (citing *N. Pac. Ry. Co. v. Thornton Bros. Co.*, 206 Minn. 193, 196, 288 N.W. 226, 227 (1939)).

■ Releases of liability are not favored by the law and are strictly construed against the benefited party. *Id.* at 923. "If the clause is either ambiguous in scope or purports to release the benefited party from liability for intentional, willful or wanton acts, it will not be enforced." *Id.* Furthermore, even if a release clause is unambiguous in scope and is limited only to negligence, courts must still ascertain whether its enforcement will contravene public policy. On this issue, a two-prong test is applied:

> Before enforcing an exculpatory clause, both prongs of the test are examined, to-wit: (1) whether there was a disparity of bargaining power between the parties (in terms of a compulsion to sign a contract containing an unacceptable provision and the lack of ability to negotiate elimination of the unacceptable provision) … *and* (2) the types of services being offered or provided (taking into consideration whether it is a public or essential service).

*Id.* (citations omitted).

■ The two-prong test describes what is generally known as a "contract of adhesion," more particularly explained in *Schlobohm*:

> It is a contract generally not bargained for, but which is imposed on the public for *necessary* service on a "take it or leave it" basis. Even though a contract is on a printed form and offered on a "take it or leave it" basis, those facts alone do not cause it to be an adhesion contract. There must be a showing that

the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation *and* that the services could not be obtained elsewhere.

*Id.* at 924–25.

*Scope of the Release*

Because there is no genuine issue of material fact as to what the release provides, whether or not Anderson read and signed it, whether or not she agreed to its terms, or the circumstances under which she signed it, we are required to ascertain whether the district court erred in its application of the law in granting summary judgment in favor of the party benefited by the release. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

■ As held in *Schlobohm*, a release of liability will not be enforced if (1) it "purports to release the benefited party from liability for intentional, willful or wanton acts," or (2) it is ambiguous in scope. *Schlobohm*, 326 N.W.2d at 923. There is nothing in the Curves release that expressly exonerates the club from liability for any intentional, willful, or wanton act. Thus, we consider whether the release is ambiguous in scope.

■ Whether an agreement is ambiguous is a question of law. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982). We review questions of law de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Contract language "is ambiguous if it is reasonably susceptible of more than one construction." *Collins Truck Lines v. Metro. Waste Control*, 274 N.W.2d 123, 126 (Minn.1979). "In order to be ambiguous in the legal sense, both constructions must be reasonable." *Id.*

■ Anderson argues that the release is ambiguous because it broadly exoner-

ates Curves from liability for "any act or omission, including negligence. . . ." As her authority for that argument she relies on dicta in *Nimis v. St. Paul Turners*, suggesting that a release that exonerated a health club for "negligence of the releasee or otherwise . . ." was ambiguous in scope as to whether it also released the club for injuries caused intentionally. 521 N.W.2d 54, 57 (Minn.App.1994). She then points to *Schlobohm* as involving a release of "liability for acts of negligence and negligence only." *Schlobohm*, 326 N.W.2d at 923.

Although the supreme court in *Schlobohm* interpreted the release as applying only to acts of negligence, the language of the release was broader than that, purporting to release Spa Petite from

> *any* claims, demands, injuries, damages, actions or causes of action, *whatsoever*, . . . and member does hereby . . . release . . . Spa Petite from all such claims, demands, injuries, damages, actions or causes of action, *and* from acts of active or passive negligence. . . .

*Id.* at 921–22 (emphasis added).

Despite the breadth of the language of the *Schlobohm* release, it was clear that it exonerated acts of negligence on the part of Spa Petite because the release expressly so provided, and it was negligence of which Spa Petite was accused. The court held the release not to be ambiguous.

The vice of ambiguous language is that it fails precisely and clearly to inform contracting parties of the meaning of their ostensible agreement. Because ambiguous language is susceptible of two or more reasonable meanings, each party might carry away from the agreement a different and perhaps contradictory understanding. In the context of a release in connection with an athletic, health, or fitness activity, the consumer surely is entitled to know precisely what liability is being exonerated. A release that is so vague, general, or broad as to fail to specifically designate the particular nature of the liability exonerated is not enforceable. *Id.* at 923.

The release here does not suffer from the infirmity of ambiguity despite its broad language any more than the broadly cast release in *Schlobohm* did. It is clear from this release that Anderson agreed to exonerate Curves from liability for negligence, that being part of the express agreement that Anderson accepted And it is solely negligence of which Curves is accused.

The unmistakable intent of the parties to the Curves agreement is that Curves at least would not be held liable for acts of negligence. The first two paragraphs of the three-paragraph document focus specifically on considerations of risk, voluntary acceptance of hazards, and waiver of liability, thus evincing a mutual intention to agree to a release. Because the parties expressed a clear intention to release liability and because that release clearly included liability for negligence, that intention should be enforced. *See Metro. Sports Facilities Comm'n v. Gen. Mills, Inc.*, 470 N.W.2d 118, 123 (Minn.1991) (where the language of a contract is plain and unambiguous, the court must enforce the contract as written).

The arguably ambiguous portion of this release is not at issue. It would subvert the parties' manifested intent to effect a release of liability for negligence if the broader language were given precedence. That would not be the better rule of law: "A better interpretation of the law is that any 'term' in a contract which attempts to exempt a party from liability for gross negligence or wanton conduct is unenforceable, not the entire [contract]." *Wolfgang v. Mid–American Motorsports, Inc.*, 898 F.Supp. 783, 788 (D.Kan.1995).

.. 

*Public Policy*

Even if a release is unambiguously confined to liability for negligence, it still will be unenforceable if it contravenes public policy. Anderson contends that the Curves contract is one of adhesion characterized by such a disparity in bargaining power that she was compelled to sign it without any ability to negotiate.

But her argument is unpersuasive in view of the *Schlobohm* holding that "an adhesion contract is ... forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere." 326 N.W.2d at 924. It is, according to *Schlobohm,* a contract "imposed on the public for *necessary* service on a 'take it or leave it' basis." *Id. Schlobohm* involved a "gym or health spa" known as Spa Petite. *Id.* at 920. Similar to Curves, it offered fitness services and required members to sign a contract that provided for a release of liability for negligence. The supreme court found no disparity in bargaining power between Spa Petite and the litigating member; found that there had been no showing that the spa's services were necessary or that they could not have been obtained elsewhere; and found that health and fitness clubs ordinarily are not within the public-service or public-necessity classification that make their services of great public importance and necessary for the public to obtain.

Even if there was a disparity of bargaining ability here—which has not been demonstrated—there was no showing that the services provided by Curves are necessary and unobtainable elsewhere. Although fitness activities surely are desirable for most people, they cannot plausibly said to be necessary. And the availability of services ranges from highly structured and formal fitness programs at commercial clubs to one's own basement or living room. Furthermore, specialized training by fitness experts is available through videotapes and compact discs that may be used at home if a person so chooses.

The Curves release did not contravene public policy, and we adopt the supreme court's conclusion in *Schlobohm:* "Here there is no special legal relationship and no overriding public interest which demand that this contract provision, voluntarily entered into by competent parties, should be rendered ineffectual." *Id.* at 926.

## DECISION

The district court did not err in granting respondent's motion for summary judgment on the ground that appellant signed and agreed to a release of respondent's liability for negligence. We affirm.

**Affirmed.**