*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0003**

Gary Carlson,
Respondent,

vs.

Ray Barta,
Appellant.

**Filed October 20, 2014
Reversed
Larkin, Judge**

Olmsted County District Court
File No. 55-CV-12-412

William L. French, Rochester, Minnesota (for respondent)

Kay Nord Hunt, Lommen Abdo, P.A., Minneapolis, Minnesota; and

Samantha O. Sutton, David M. Werwie & Associates, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

In this appeal from judgment following a jury trial in a negligence action, appellant challenges the district court's denial of his pretrial motion for summary

judgment. He argues that respondent's negligence claim arose from respondent's performance under the parties' timber-sale contract and that the claim is barred under a provision in the contract. We conclude that the district court erroneously determined that the parties' contract is irrelevant to respondent's negligence claim and that the relevant provision is unenforceable. And because the plain language of the provision bars respondent's negligence claim, we reverse the judgment against appellant.

**FACTS**

Respondent Gary Carlson is a "certified Minnesota educational program logging professional." He started logging in 1999, taking on small jobs in Rochester from the Minnesota Department of Natural Resources (DNR). His business has since grown to include larger jobs, which are still mostly sourced by the DNR. Around March of 2007, Carlson responded to a newsletter ad placed by appellant Ray Barta, which advertised the sale of "100+ cord [of] aspen trees." Soon after, Carlson visited Barta's property to inspect the property and the trees that Barta wanted to remove. Carlson informed Barta that he would need to find a purchaser for the wood before he would agree to remove the trees.

In January 2008, after finding a willing buyer, Carlson returned to Barta's property to remove the trees. On Carlson's first day, the parties signed a form contract that the DNR provides for private landowners. Barta supplied the contract, but Carlson was

familiar with the form, and he reviewed it before he began his work. The contract is titled "Timber Sale Contract," and it includes the following liability clause:[1]

> SECTION 8. IT IS MUTUALLY UNDERSTOOD AND AGREED BY AND BETWEEN THE PARTIES HERETO AS FOLLOWS:
> 1. LIABILITY – The Purchaser agrees to save and hold harmless the Seller from any and all claims, penalties or expenses of any nature, type or description whatsoever, arising from the performance of this contract, whether asserted by itself or any individual, organization or governmental agency or subdivision.[2]

After working on Barta's property for one month, Carlson had removed all but a small patch of the targeted trees. On February 16, Carlson drove his 28,000-pound harvester toward the remaining patch of trees.[3] He crossed an area that he thought was an open field, but the area contained a partially frozen pond covered in snow. The harvester broke through ice and sunk into the water below.

Carlson sued Barta for negligence, alleging that Barta failed to disclose the pond's location and that he had suffered property damage and lost income as a result. Barta moved to dismiss Carlson's lawsuit under Minnesota Rule of Civil Procedure 12.02(e). He argued, in part, that the suit was precluded by Carlson's agreement, under sections 7 and 8 of the parties' contract, to assume the risk of, and hold Barta harmless for, any

---

[1] The parties disagree regarding whether the clause is an exculpatory clause or one for indemnification. We need not resolve that issue and therefore refer to the clause as a "liability clause," consistent with the contractual language.

[2] The contract also includes the following provision: "SECTION 7. THE PURCHASER AGREES TO CUT AND REMOVE SAID TIMBER AT PURCHASER'S OWN RISK AND IN A WORKMAN LIKE MANNER . . . ."

[3] The harvester cuts a tree down, measures its length, strips off its limbs, and cuts it to length.

damages arising out of the performance of the contract. The district court denied Barta's motion, declining to consider the substance of the contract because it was a "mere reference" in Carlson's complaint. The district court also reasoned, "[Carlson's] claim is based on negligence, not breach of contract. These are fundamentally different legal theories . . . ."

Later, Barta moved for summary judgment under Minnesota Rule of Civil Procedure 56, again arguing that the parties' contract precluded Carlson's lawsuit. The district court denied Barta's motion. It once again reasoned that "[Carlson's] claim is based on negligence, not breach of contract." It also concluded that the contract's "exculpatory clause" did not control because the alleged breach of duty occurred before the contract was executed and that the clause was unenforceable because "[r]elieving landowners of their obligation to repair dangerous conditions, or to provide invited persons with adequate warning of the same, not only contravenes public policy, but may in some situations constitute intentional, willful, or wanton behavior."

The case was tried to a jury. On the first day of trial, the district court addressed the relevance of the parties' contract. The district court judge stated, "Let's talk about this contract. I've issued a number of decisions on this case really identifying that the alleged breach here occurred prior to execution of the contract and that the exculpatory clause and the language within that contract really does not apply." The district court acknowledged that if the contract "did apply, it would be a different situation . . . especially considering that [Carlson] conceded the exculpatory clause was not ambiguous." Carlson argued that the contract was "superfluous" and "prejudicial."

4

According to Carlson, it was prejudicial because Carlson had requested that it be backdated one year for his tax purposes. The district court ruled that the contract would not be admitted as an exhibit at trial because it "would be highly prejudicial" and "[i]t's completely unrelated to the negligence issue." The district court explained:

> This case has become incredibly complicated because we have a breach—allegedly a breach of duty that allegedly occurred prior to the execution of the contract. We have a contract that has a solid exculpatory clause. At least it's not disputed that it's a solid exculpatory clause, especially considering that [Carlson] agrees that it's not ambiguous . . . But we need to focus on the theory of this case being negligence and not breach of contract because as the facts have been presented to the Court, this alleged breach all occurred prior to execution of the contract and that's why it survived summary judgment.

The jury returned a unanimous special verdict in Carlson's favor. The jury found that Barta was 65% at fault and that Carlson was 35% at fault. Barta moved for judgment as a matter of law (JMOL), a new trial, and to stay entry of judgment, once more arguing that Carlson had assumed the risk of, and agreed to hold Barta harmless for, any damages arising from the performance of the contract. The district court denied Barta's motion in its entirety explaining, "[Carlson's] claim is based on negligence, not breach of contract. Moreover, there are facts in the record that support the breach [of duty] occurred prior to execution of the contract." The court then reiterated its prior ruling regarding the "exculpatory clause" and stated, "[o]ne of the most longstanding duties in our law is that of a landowner to its entrant, and this Court finds waiver of this duty through the use of an exculpatory clause violates public policy."

The district court ordered judgment against Barta in the amount of $110,898.39 for property damage and lost income, consistent with the jury's special verdict. Barta appeals, asking us to reverse the judgment against him and order dismissal of Carlson's action.

## DECISION

Barta appeals from judgment, challenging the district court's denial of his motion for summary judgment. Barta contends that because the "denial of summary judgment is based on a question of law, its denial is . . . reversible on appeal from the judgment." Carlson does not dispute that contention. In fact, Carlson addressed the merits of the district court's summary-judgment ruling in his brief and at oral argument.

A pretrial summary-judgment ruling is reviewable on appeal when it is based on a question of law. *Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff, & Hobbs, Ltd.*, 783 N.W.2d 733, 744 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010). The district court's summary-judgment ruling was based, in part, on its legal conclusion that the parties' contract does not bar Carlson's negligence claim.[4] *See City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 843 N.W.2d 577, 581 (Minn. 2014) (stating that contract interpretation presents a question of law that is reviewed de novo and that when contractual language is clear, a court enforces the parties' agreement as expressed in the language). We recognize that the district court also reasoned that "[t]he record is replete with conflicting averments that demonstrate the existence of

---

[4] The district court also rejected Barta's argument for summary judgment under a retained-control theory, concluding that "[t]he theory of retained control is not applicable in this case."

6

significant and genuine issues of fact," but the district court did not identify those factual issues. The district court appears to have been referring to factual disputes regarding Barta's duty of care as a landowner, which the district court discussed in its summary-judgment memorandum. However, we discern no factual dispute regarding the legal question of whether Carlson's negligence claim is contractually barred. And because the denial of summary judgment was based on that legal issue, the denial is within our scope of review. *See Schmitz*, 783 N.W.2d at 744.

"A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "[Appellate courts] review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted).

## I.

We first address the district court's conclusion that the parties' contract is irrelevant to the resolution of Carlson's negligence claim because Carlson's lawsuit sounds in tort and not in contract. People are free to contract away claims and remedies they would otherwise have. *See Indep. Sch. Dist. No. 877 v. Loberg Plumbing & Heating Co.*, 266 Minn. 426, 434, 123 N.W.2d 793, 798 (1963) ("It is well established that the

7

parties could, by contract, without violation of public policy, protect themselves against liability resulting from their own negligence."); Restatement (Second) of Torts § 496B cmt. b (1965) ("There is no general policy of the law which prevents the parties from agreeing that the defendant shall be under no such general or specific duty to the plaintiff."). Thus, a contract may provide a defense to a tort claim. *See, e.g.*, *Morgan Co. v. Minn. Mining & Mfg. Co.*, 310 Minn. 305, 312, 246 N.W.2d 443, 448 (1976) (holding that a clause that limited defendant's liability precluded plaintiff's ordinary negligence claim); *Beehner v. Cragun Corp.*, 636 N.W.2d 821, 827-28 (Minn. App. 2001) (holding that a valid exculpatory clause barred plaintiff's ordinary negligence claim), *review denied* (Minn. Feb. 28, 2002).

Such is the case here: Barta raised a contractual defense to Carlson's negligence claim. The parties' contract therefore is relevant when determining whether Carlson's claim is viable. Specifically, we must determine whether the liability clause in the contract is enforceable and, if so, whether it precludes Carlson's claim. We address each issue in turn.

## II.

Although exculpatory clauses are valid under certain circumstances, the law generally disfavors them and courts strictly construe them against benefited parties. *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn. 1982). An exculpatory clause is unenforceable if (1) it is ambiguous in scope, (2) it purports to release the benefited party from liability for intentional, willful, or wanton conduct, or (3) enforcing

8

it would contravene public policy. *Id.* To determine whether enforcement would violate public policy, courts consider two factors:

> (1) whether there was a disparity of bargaining power between the parties (in terms of a compulsion to sign a contract containing an unacceptable provision and the lack of ability to negotiate elimination of the unacceptable provision), *and* (2) the types of services being offered or provided (taking into consideration whether it is a public or essential service).

*Id.* (citation omitted).

Indemnification clauses also must be expressed in "clear and unequivocal terms" and must not contravene public policy. *Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 791 (Minn. 2005) (quotation omitted). But courts "examine the enforceability of exculpatory and indemnification clauses under different standards." *Id.* at 792 n.6. "Indemnification clauses are subject to greater scrutiny [than exculpatory clauses] because they [not only] release negligent parties from liability, but also may shift liability to innocent parties." *Id.* With these principles in mind, we consider whether the liability clause in this case is enforceable.

*Ambiguity*

In district court, Carlson conceded that the liability clause is not ambiguous. He does not argue otherwise on appeal. Ambiguity therefore is not a basis for determining that the clause is unenforceable.

*Intentional, Willful, or Wanton Conduct*

The district court reasoned that the liability clause was unenforceable because it "may in some situations [excuse a landowner's] intentional, willful, or wanton behavior."

9

"Willful and wanton conduct" is defined as "the failure to exercise ordinary care after discovering a person or property in a position of peril." *Beehner*, 636 N.W.2d at 829. Because the liability clause in the parties' contract refers to "any and all claims," it could, in theory, apply to an action based on intentional conduct. But Carlson's claim is not based on an intentional, willful, or wanton act. Carlson's complaint alleges only that Barta was "negligent in disclosing the location of the pond." There is no assertion that Barta intentionally withheld the pond's location or failed to exercise ordinary care after discovering Carlson in peril.

Moreover, we are unaware of any reported case in which a clause that purportedly released liability for intentional, willful, or wanton conduct was held unenforceable as applied to a routine negligence claim (i.e., a claim that was not based on intentional, willful, or wanton acts).[5] In fact, this court has stated that, when a challenged portion of a release is not at issue, "[i]t would subvert the parties' manifested intent to effect a release of liability for negligence if the broader language were given precedence." *Anderson v. McOskar Enters., Inc.*, 712 N.W.2d 796, 801 (Minn. App. 2006). We stated that the "better interpretation of the law is that any 'term' in a contract which attempts to

_____

[5] Carlson contends that "[a] very similar clause, one also not limited to negligence, was found to be invalid" in *McCarthy Well Co. v. St. Peter Creamery, Inc.*, 389 N.W.2d 514 (Minn. App. 1986), *rev'd on other grounds*, 410 N.W.2d 312 (Minn. 1987). His reliance is misplaced. In *McCarthy*, we held that the district court properly excluded a contractual defense to a negligence claim because the relevant exculpatory clause was unconscionable and invalid. *Id.* at 518. We further stated in dictum that the "clause is not limited to the permissible exoneration from liability for negligence and hence is invalid." *Id.* However, the supreme court declined to reach that issue on review. *McCarthy Well Co. v. St. Peter Creamery, Inc.*, 410 N.W.2d 312, 315 (Minn. 1987). Instead, the supreme court found it sufficient "to invalidate the clause because it is unreadable," which was the basis for the district court's ruling. *Id.*

10

exempt a party from liability for gross negligence or wanton conduct is unenforceable, not the entire contract." *Id.* (quotation omitted). In *Anderson*, we therefore enforced the parties' "clear intention to release liability" for negligence despite the contract's "broad language" that released the defendant from "any and all responsibilities or liabilities from injuries or damages." *Id.* at 799, 801. Other holdings of this court are in accord. *See Nimis v. St. Paul Turners*, 521 N.W.2d 54, 57-58 (Minn. App. 1994) (declining to enforce only that portion of a clause that was ambiguous and that appeared to release property owner from injuries caused intentionally, instead of the entire clause); *Malecha v. St. Croix Valley Skydiving Club, Inc.*, 392 N.W.2d 727, 729-30 (Minn. App. 1986) (holding that clause, which "could be construed to extend beyond acts of negligence," was limited to release of liability for negligence and noting that plaintiff alleged only that defendant had been negligent), *review denied* (Minn. Oct. 29, 1986).

In sum, Barta does not rely on the contract to avoid liability for a willful, wanton, or intentional act. *See Schlobohm*, 326 N.W.2d at 923 (noting that the plaintiff's claims "are based on negligence, and they make no claim that [the defendant] or its employees acted willfully, intentionally or wantonly"). Enforcement of the liability clause therefore does not violate the rule that "[a] contract cannot release a party from intentional or willful acts." *In re Peer Review Action*, 749 N.W.2d 822, 829 (Minn. App. 2008), *review dismissed* (Minn. Sept. 23, 2008).

*Public Policy*

The district court also reasoned that the parties' liability clause is unenforceable because "[r]elieving landowners of their obligation to repair dangerous conditions, or to

11

provide invited persons with adequate warning of the same . . . contravenes public policy." When determining whether a clause is unenforceable because it contravenes public policy, a court considers the factors set forth by the supreme court in *Schlobohm*: disparity of bargaining power and type of service offered. 326 N.W.2d at 923.

An exculpatory clause that is the product of disparate bargaining power violates public policy. *Id*. The use of an adhesion contract, which is "drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere," may indicate disparate bargaining power. *Id.* at 924. Here, the contract was drafted by the DNR. Both parties voluntarily agreed to the contract, and it did not involve an otherwise unattainable service. Carlson, a logger for about nine years at the time of signing, was familiar with the DNR contract. He was not unwilling or unknowing, and the contract was not forced on him. These circumstances do not reflect disparate bargaining power. In fact, Carlson arguably had greater knowledge of the contract's subject matter and therefore a superior bargaining position.

An exculpatory clause may also violate public policy if it governs the provision of a public or essential service. *Id.* at 923. A service is considered public or essential if it "is the type generally thought suitable for public regulation." *Id.* at 925. A court considers "whether the party seeking exoneration offered services of great importance to the public, which were a practical necessity for some members of the public." *Id.* at 926. Public or essential services include "common carriers, hospitals and doctors, public utilities, innkeepers, public warehousemen, employers and services involving extra-hazardous activities." *Id.* at 925 (footnotes omitted). The contract at issue here

12

benefitted only Carlson and Barta. It did not involve a service of great importance to the public, nor was it essential.

Because there was no disparity of bargaining power and the contract did not involve a public or essential service, the parties' liability clause does not violate public policy.

*Exculpatory vs. Indemnification Clauses*

Carlson argues that the liability clause in the parties' contract is one for indemnification and that the clause is therefore subject to greater scrutiny. "Indemnification clauses are subject to greater scrutiny because they release negligent parties from liability, but also may shift liability to innocent parties." *Yang*, 701 N.W.2d at 792 n.6. But Carlson is not an "innocent party." The jury apportioned 35% of fault for the accident to him. Moreover, we have considered every possible legal basis to hold that the clause is unenforceable, and we discern no basis to do so. We therefore conclude that the liability clause in the parties' contract is enforceable whether it is construed as an exculpatory clause or one for indemnification.

## III.

Having determined that the liability clause is enforceable, we next determine whether it bars Carlson's negligence claim. The district court stated that because "the alleged breach of duty occurred prior to execution of the parties' contract, the exculpatory clause does not control." The record indicates that the district court reasoned that Barta may have breached the common-law duty of care that a landowner owes to entrants on his land by failing to disclose the location of the pond during Carlson's first visit to

13

Barta's property. The district court therefore reasoned that because the underlying breach occurred before the contract was formed, the contract does not bar Carlson's negligence claim. The district court's reasoning seems to be based on an implicit conclusion that respondent's negligence claim accrued when Barta failed to disclose the pond's location during Carlson's initial visit to Barta's land. That legal conclusion is flawed.

The elements of a negligence claim are duty, breach of duty, injury, and causation. *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). A claim does not accrue until it may be brought without dismissal for failure to state a claim on which relief may be granted. *Molloy v. Meier*, 679 N.W.2d 711, 720 (Minn. 2004). "Accrue" is defined as "to come into existence as an enforceable claim." *Id.* at 721 (quotation omitted). A "basic element[] necessary to maintain a claim for negligence" is "that [the] plaintiff did in fact suffer injury." *Schmanski v. Church of St. Casimir of Wells*, 243 Minn. 289, 292, 67 N.W.2d 644, 646 (1954). The supreme court has "repeatedly held that a negligent act is not itself sufficient for a negligence cause of action to accrue." *MacRae v. Grp. Health Plan, Inc.*, 753 N.W.2d 711, 719 (Minn. 2008). "[A] cause of action accrues when some injury or damage from the negligent act actually occurs." *Id.* "Alleged negligence coupled with the alleged resulting damage is the gravamen in deciding the date when [a] cause of action accrues." *Offerdahl v. Univ. of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 429 (Minn. 1988). In sum, a cause of action for negligence will not accrue "until the plaintiff has suffered some injury, so the question is: What is the injury and when did it occur?" *Molloy*, 679 N.W.2d at 721.

14

Carlson's injury occurred when his harvester broke through the ice on Barta's property. Assuming, without deciding, that Barta breached a common-law duty during Carlson's first visit to Barta's property, that purported precontract breach did not give rise to a negligence claim. *See MacRae*, 753 N.W.2d at 719. Carlson's negligence claim did not accrue until his harvester broke through the ice on Barta's property, because that is when Carlson suffered an injury.

In sum, Barta's purported precontract breach did not ripen into a negligence claim until Carlson's harvester went through the ice on Barta's property during Carlson's performance under the contract. Thus, Carlson's negligence claim arose from the performance of the contract. Because Carlson expressly agreed to release Barta from liability for "any and all claims, penalties or expenses of any nature, type or description whatsoever, arising from the performance of this contract, whether asserted by [him] or any individual," his negligence claim is barred under the plain language of the parties' contract. *Fond du Lac Band of Lake Superior Chippewa*, 843 N.W.2d at 581 (stating that when contractual language is clear, a court enforces the parties' agreement as expressed in the contractual language).

## IV.

Carlson raises additional arguments in support of affirmance. For example, in his brief to this court, he argued that he and Barta entered into an oral contract that did not contain the liability clause prior to signing the written contract, that Barta had a duty to provide a site map, and that the liability clause is barred under Minnesota Statutes section 337.02 (2012). At oral argument to this court, Carlson also argued that the contract is

15

unenforceable because Barta signed the contract in the box labeled "Approved and agreed to by the Seller" instead of in the box adjoining it labeled "Signature of Seller." None of those arguments was considered or determined in the district court.

"A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted). "[A] party [may not] obtain review by raising the same general issue litigated below but under a different theory." *Id.*; *see also Sec. Bank of Pine Island v. Holst*, 298 Minn. 563, 564, 215 N.W.2d 61, 62 (1974) ("It is elementary that on appeal a case will be considered in accordance with the theory on which it was pleaded and tried, and a party cannot for the first time on appeal shift his position." (quotation omitted)). These principles apply equally to a plaintiff who prevailed in the district court. *See Mattson v. Underwriters at Lloyds of London*, 414 N.W.2d 717, 721-22 (Minn. 1987) (stating that plaintiffs who won their case at trial but later lost on appeal "were under an obligation to preserve their alternative theories," that "if plaintiffs had any concern about sustaining the trial court's ruling on appeal, they should have taken measures to preserve their other arguments," and that "[f]ailing to take some such precaution and then attempting to raise the 'new' theory leaves a party vulnerable to a claim that the party is impermissibly shifting theories on appeal").

Because Carlson's additional arguments were not considered or determined by the district court, Barta argues that they are not properly before this court on appeal.

16

Nonetheless, Barta addresses the merits of Carlson's new arguments. Because the new arguments are generally unsupported and easily rejected, we address them briefly.

As to Carlson's assertion that the liability clause is barred by statute, section 337.02 provides:

> An indemnification agreement contained in, or executed in connection with, *a building and construction contract* is unenforceable except to the extent that: (1) the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including breach of a specific contractual duty, of the promisor or the promisor's independent contractors, agents, employees, or delegatees; or (2) an owner, a responsible party, or a governmental entity agrees to indemnify a contractor directly or through another contractor with respect to strict liability under environmental laws.

(Emphasis added.)

A "building and construction contract" is defined as "a contract for the design, construction, alteration, improvement, repair or maintenance of real property, highways, roads or bridges." Minn. Stat. § 337.01, subd. 2 (2012). Because the definition is unambiguous, we do not engage in statutory construction; we apply the plain meaning of the statutory language. *See State v. Bluhm*, 676 N.W.2d 649, 651 (Minn. 2004) ("[W]hen the legislature's intent is clear from plain and unambiguous statutory language, [an appellate] court does not engage in any further construction and instead looks to the plain meaning of the statutory language." (quotation omitted)).

Under the plain language of the statute, Barta and Carlson's contract is not a building and construction contract. The contract is titled "Timber Sale Contract." It identifies the seller, the purchaser, the amount purchaser agreed to pay seller, the timber

17

species, the estimated volume, the unit price, and the bid value. The contract in no way describes "the design, construction, alteration, improvement, repair, or maintenance of real property." Minn. Stat. § 337.01, subd. 2. Moreover, Carlson does not cite authority supporting his contention that a contract for the sale of timber, which involves cutting and removing timber from real property, is a building and construction contract. We therefore reject Carlson's argument under section 337.02. Carlson's other new arguments are similarly unsupported and without merit. We reject them without discussion. *See Bartl v. City of New Ulm*, 245 Minn. 148, 154, 72 N.W.2d 303, 307 (1955) ("Plaintiff's other assignments of error . . . have been carefully examined. We conclude that they are without merit and are not of sufficient importance as to require discussion.").

In conclusion, we hold that the liability clause in the parties' contract is enforceable, that it bars Carlson's negligence claim, and that the district court erred by denying Barta's motion for summary judgment. Carlson's claim should not have been tried to the jury. We therefore reverse the judgment against Barta.

**Reversed.**