#30579-r-JMK
**2025 S.D. 17**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JAMES AND AMBER MAY,                                Plaintiffs and Appellants,

  v.

FIRST RATE EXCAVATE, INC.,                          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

* * * *

JUSTIN T. CLARKE of
Davenport, Evans, Hurwitz
   & Smith, LLP
Sioux Falls, South Dakota                    Attorneys for plaintiffs
                                             and appellants.


RYLAND L. DEINERT
RENE CHARLES LAPIERRE of
Klass Law Firm, LLP
Sioux City, Iowa                             Attorneys for defendant
                                             and appellee.

* * * *

ARGUED
JUNE 6, 2024
OPINION FILED **03/12/25**

#30579

KERN, Justice

[¶1.]		James and Amber May retained RES Construction (RES) to construct their home in Sioux Falls.  RES hired First Rate Excavate, Inc. (First Rate), a subcontractor, to install the septic system for the home and construct the home's foundation, which the Mays allege was installed several feet below grade level.  The Mays claim this resulted in significant drainage and septic issues that caused damage to the Mays' new house and yard and neighboring yards.  The Mays sued First Rate for negligence sounding in tort.  The circuit court dismissed the Mays' claim based on the economic loss doctrine and the Mays appeal.  We reverse.

### Factual and Procedural Background

[¶2.]		Construction on the Mays' home began in 2015.  RES hired First Rate "to perform dirt work associated with the construction of the home, including digging and placement of the foundation, and placing the septic system for the home in accordance with the original engineer's renderings."  The Mays moved into the home soon after it was completed in 2016.

[¶3.]		Shortly thereafter, on September 6, 2016, heavy rain fell in the Sioux Falls area and the Mays "noticed a creek running through their back yard." Further, on May 8, 2017, and in early April 2018, the basement was "infiltrated" with water.  Additionally, during the infiltration event in April 2018, the septic system was "under water and quit working."  Consequently, First Rate attempted to regrade the yard and installed a second septic system, which ultimately failed as well.  As a result of the drainage and septic issues, "a lagoon exists in [the Mays'] yard and drains into their neighbors' property, causing significant issues."  In

-1-

addition, "the concrete work around the house has been damaged due to moisture sitting against the house and failing to drain away."

[¶4.]		According to the Mays, these issues "are all directly related to the digging and placement of the foundation for the home, which is multiple feet lower than the original plans intended." The Mays claim that the "only way to fix their home . . . is to pick up the home, move it, and put in a new foundation that is multiple feet higher, where it was originally supposed to be, and put the home back down on the new foundation."

[¶5.]		The Mays brought suit against First Rate, alleging only negligence.[1] The Mays sought damages "including the costs of repairing the home . . . and all other compensation to which Plaintiffs are entitled." The Mays also sought attorney fees and requested "such other and further relief as the Court deems just and equitable." In response, First Rate filed a motion to dismiss, arguing that because the parties lacked privity of contract, the Mays could not sue First Rate under the terms of the Mays' contract with RES and that the Mays' claims were barred by the six-year statute of limitations set forth in SDCL 15-2-13.

---

1.	The Mays entered into a settlement agreement with RES and signed a *Pierringer* release. *See Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963); *Schick v. Rodenburg*, 397 N.W.2d 464, 467 (S.D. 1986). "*Pierringer* releases are settlement agreements between a plaintiff and some, but not all, defendants in a case. A *Pierringer* release satisfies 'that portion of the plaintiff's cause of action for which the settling joint tortfeasor is responsible, while at the same time reserving the balance of the plaintiff's cause of action against a nonsettling joint tortfeasor.'" *Allsop Venture Partners III v. Murphy Desmond SC*, 991 N.W.2d 320, 332 (Wis. 2023) (quoting *Imark Indus., Inc. v. Arthur Young & Co.*, 436 N.W.2d 311, 318 (Wis. 1989)).

[¶6.]    In a December 2, 2022 email memo, the circuit court sua sponte raised the issue of whether the economic loss theory—which holds that a contracting party's remedies for purely economic loss are limited to those specified in the contract—would bar the Mays' tort claim. *See Kreisers Inc. v. First Dakota Title Ltd. P'ship*, 2014 S.D. 56, ¶ 29, 852 N.W.2d 413, 421; *Diamond Surface, Inc. v. State Cement Plant Comm'n*, 1998 S.D. 97, ¶ 22, 583 N.W.2d 155, 160. The parties submitted supplemental briefing on that issue, pursuant to the court's request, and a motion hearing was held on December 9, 2022. At this hearing, the Mays asserted that the economic loss theory applied only to contracts involving the sale of goods under the Uniform Commercial Code (UCC). In response, the circuit court explained its thinking regarding the economic loss issue:

> Yeah. Well, I don't think it is a good, so I'm not worried about that, but . . . the statute, the negligence statute that you quoted sounds you know very . . . all-encompassing, but I think we would all acknowledge that at least in some circumstances the UCC, for example, or product liability . . . when we're dealing just with damage to the good in question rather than damage to other, the good or the property that was the subject of the contract rather than other property or personal injury. The economic loss doctrine has been applied in South Dakota notwithstanding that seemingly all-encompassing neglige[nce] statutes.
>
> So, we know that the South Dakota Supreme Court is not going to say that every single claim of loss can have a negligence tort remedy for breach of duty of reasonable care. So, that leads me, so we get back in to the, well, we're really the economic loss doctrine in any event should be confined to instances where there's privity of contract because we don't want to leave people without a remedy, obviously, and that's certainly true, but in this case there was a chain of privity because the plaintiffs were in privity with the codefendant, RES, who was in privity with our current defendant, First Rate Excavate. And so, if the fault [lies] with First Rate Excavate and RES was basically vicariously liable, maybe there's a combination of vicarious

liability because First Rate screwed it up allegedly, and RES had a duty to supervise their subs and catch it, and you know because they had a contractual obligation to provide a home that met the contract and was suitable for its intended purpose.

So, [the Mays], it seems to me intentionally stepped out of the privity chain so that they could take advantage of the more freewheeling, ah, amorphous tort remedy, and I think there's probably some scholars that would say, yeah, that's a good idea. That's what we should allow people to do, you know, kind of let's make sure that we've got every remedy available to make sure that every wrong is righted in the most efficient, and . . . freedom of choice amongst remedies . . . marketplace.

But others, legal scholars I think would say, you know the law of contract is very predictable. Construction litigation is a very complicated matter of commercial law and predictability. And in method -- methodology is a worthy goal, and so if you buy a house from a general contractor, you know that there's subs. You know the general is responsible for any of the flaws that the subs may have caused, and so if you settle with the general under a Pierringer release or whatever, and figure they're going to be free to you know put that money in your war chest to fund your litigation against the people down the food, the food chain of privity, you've intentionally severed your own privity chain, and so I think the argument can be made that you really are only crying crocodile tears when you – if we grant summary judgment here and say, sorry, you . . . burned your own bridge.

[¶7.]     At the conclusion of the hearing, the circuit court took the matter under advisement. In its December 1, 2023 memorandum opinion, the court concluded that the economic loss theory should apply in construction contracts and thus foreclosed the Mays' tort claim. On this basis the court granted First Rate's motion to dismiss. The Mays appeal, raising one issue, which we restate as follows:

> 1.     Whether the circuit court erred when it granted First Rate's motion to dismiss on the grounds that the economic loss doctrine applied.

## Analysis

### a. Whether the economic loss doctrine applies outside the UCC context to the Mays' negligence claim.

[¶8.] "In UCC cases, this Court has adopted the economic loss doctrine which provides that 'economic losses are not recoverable under tort theories' such as negligence." *Jorgensen Farms, Inc. v. Country Pride Corp., Inc.*, 2012 S.D. 78, ¶ 24, 824 N.W.2d 410, 418 (quoting *Diamond Surface*, 1998 S.D. 97, ¶ 24, 583 N.W.2d at 161). "The significance of the doctrine is that it 'precludes parties under certain circumstances from eschewing the more limited contract remedies and seeking tort remedies.'" *Kreisers*, 2014 S.D. 56, ¶ 29, 852 N.W.2d at 421 (quoting *Insurance Co. of N. Am. v. Cease Elec. Inc.*, 688 N.W.2d 462, 467 (Wis. 2004)).

[¶9.] "The prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id.* (citation omitted). "The doctrine draws a legal line between contract and tort liability that forbids tort compensation for certain types of foreseeable, negligently caused, financial injury." *Id.* (quotation marks omitted) (citation omitted). "The economic loss doctrine, therefore, sets forth that regardless of whether a tort duty may exist between contracting parties, the actual duty one party owes to another for purely economic loss should be based exclusively on the contract to which they agreed and assigned their various risks." *Id.*

[¶10.] Relying primarily on *City of Lennox v. Mitek Industries, Inc.*, 519 N.W.2d 330, 333 (S.D. 1994), the Mays argue the economic loss doctrine does not apply here because the dispute "does not concern damages incurred in the operation

of a contract for the sale of goods" and the doctrine does not apply outside the context of the UCC. Like the circuit court, First Rate relies on *Taco John's of Huron, Inc. v. Bix Produce Co., LLC*, No. CIV. 07-4134-KES, 2008 WL 11450655, at *4 (D.S.D. Sept. 18, 2008)[2] and maintains the doctrine applies outside the context of UCC cases.[3]

[¶11.]     This Court first applied the economic loss doctrine to a tort claim involving defective goods under Article 2 of the UCC in *City of Lennox*, 519 N.W.2d at 333. There, the Court stated, "[t]he general rule is that economic losses are not recoverable under tort theories; rather, they are limited to the commercial theories found in the UCC." 519 N.W.2d at 333.[4] In *Diamond Surface*, we reaffirmed that "economic damages are not recoverable under the tort theory of negligence and

---

2.     The circuit court relied in part on *Taco John's*, where the federal district court of South Dakota, rejected the plaintiff's argument that the "economic loss rule only applies if the UCC governs the relationship and transaction in question." *Taco John's*, 2008 WL 11450655, at *4.

3.     First Rate's argument regarding the application of the economic loss beyond the UCC is somewhat unclear. In its briefing, it states, "Because this dispute does *not* concern damages incurred in the operation of a contract for the sale of goods, the economic loss rule does not permit the Mays' recovery." (Emphasis added.) In support, it cites to *City of Lennox*, and states, "Because the UCC applied, the court reasoned that '[r]ecovery of economic losses is limited to the remedies of the [UCC].' Here, the work of First Rate for RES was *outside of the UCC* and the economic loss doctrine applies precluding the Mays' claims."

4.     In adopting this rule, we also recognized two exceptions to the economic loss doctrine: (1) "when personal injury is involved" and (2) "when the damage is to 'other property' as opposed to the specific goods that were part of the transaction." *City of Lennox*, 519 N.W.2d at 333. The Mays argue the other property exception is applicable here. In light of our determination regarding the inapplicability of the economic loss doctrine to the Mays' claims, as discussed below, however, we need not address this argument.

instead are governed by the UCC." 1998 S.D. 97, ¶ 25, 583 N.W.2d at 162. *See also, Jorgensen Farms*, 2012 S.D. 78, ¶ 24, 824 N.W.2d at 418 (explaining that this Court has adopted the economic loss doctrine in UCC cases "which provides that 'economic losses are not recoverable under tort theories' such as negligence" thereby limiting a plaintiff "to the commercial theories found in the UCC." (citation omitted)).

[¶12.]     In *Kreisers*, we were asked to extend the economic loss doctrine to a claim for damages resulting from the alleged negligent performance of professional services by a title company. 2014 S.D. 56, ¶ 30, 852 N.W.2d at 421. We rejected this expansion, noting that "our application of the doctrine was limited to commercial transactions under the Uniform Commercial Code." *Id.* Our decision in *Kreisers* also warned that "by extending the economic loss doctrine to this case, we might risk foreclosing future negligence actions for claims like legal malpractice, which quite often only involve claims for purely economic loss." *Id.* ¶ 32, 852 N.W.2d at 422.

[¶13.]     This Court has never extended the economic loss doctrine beyond claims in tort arising from a transaction predominantly involving the sale of defective goods under the UCC and there is not a principled reason for doing so in this case. Indeed, in cases decided after the federal district court's decision in *Taco John's*, we have confirmed that in South Dakota, the economic loss doctrine is limited to UCC cases. *See e.g.*, *Jorgensen Farms*, 2012 S.D. 78, ¶ 24, 824 N.W.2d at 418 ("In UCC cases, this Court has adopted the economic loss doctrine which provides that 'economic losses are not recoverable under tort theories' such as negligence."); *Kreisers*, 2014 S.D. 56, ¶ 30, 852 N.W.2d at 421 (recognizing the

economic loss doctrine is "limited to commercial transactions under the Uniform Commercial Code.") (citing *City of Lennox*, 519 N.W.2d at 333).

[¶14.] Further, the Minnesota Supreme Court, which we have previously cited in applying the economic loss doctrine, has specifically rejected the application of the economic loss doctrine to claims arising outside the UCC or claims involving the negligent provision of services. *See Kreisers*, 2014 S.D. 56, ¶ 31, 852 N.W.2d at 421 (citing *McCarthy Well Co., Inc. v. St. Peter Creamery, Inc.*, 410 N.W.2d 312, 314–15 (Minn. 1987)). In doing so, the Minnesota Supreme Court clarified that the phrase "commercial transaction" as used in its prior decision adopting the economic loss doctrine, refers specifically to "transaction[s] governed by Article 2 of the Uniform Commercial Code[.]" *McCarthy Well Co.*, 410 N.W.2d at 314. The court stated that "[w]hen the U.C.C. does not apply, the transaction is not a 'commercial transaction,' and the [economic loss doctrine] does not apply." *Id.* at 315.[5]

[¶15.] Similarly, Wisconsin has "declined to apply the economic loss doctrine to contracts for services." *Grams v. Milk Prods., Inc.*, 699 N.W.2d 167, 171 (Wis. 2005) (citing *Cease Elec.*, 688 N.W.2d at 464). "Central to [the Wisconsin Supreme Court's] decision was the fact that no body of law similar to the UCC applies to contracts for services."[6] *Id.*

---

5. The Minnesota Legislature, by statute, subsequently limited the economic loss doctrine to claims arising from the sale of defective goods. *See* Minn. Stat. Ann. § 604.101.

6. The Wisconsin Supreme Court explained that the economic loss rule, as a judicially created doctrine, was designed to prevent "duplicating or overriding" the UCC's "comprehensive system for compensating consumers for economic loss arising from the purchase of defective products." *Grams*,

(continued . . .)

[¶16.]    In addition to the jurisdictions that have rejected the expansion of the economic loss doctrine beyond claims arising from defective goods, the Florida Supreme Court rolled back its prior expansion of the doctrine in tort claims arising outside the context of products liability claims. *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 407 (Fla. 2013). After reviewing the "original purpose of the economic loss rule," as well as what it referred to as "the unprincipled extension of the rule," the court held "that the economic loss rule applies only in the products liability context." *Id.* In retreating from its prior expansion of the rule, the court expressly recognized that its "experience with the economic loss rule over time, which led to the creation of the exceptions to the rule, . . . demonstrates that expansion of the rule beyond its origins was unwise and unworkable in practice." *Id.*

[¶17.]    Other jurisdictions have confronted similar challenges when applying the economic loss doctrine outside the sphere of products liability. *See Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 11 (Utah 2003) ("Focusing on the character of the harm, however, ma[kes] it difficult to apply the economic loss doctrine beyond the realm of products liability, where torts such as fraud and conversion exist to remedy purely economic losses in non-contractual settings."); *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 874 (9th Cir. 2007) ("When applied in cases outside the product liability context, the doctrine has produced difficulty and confusion.").

---

(. . . continued)

    699 N.W.2d at 171–72. Accordingly, the Wisconsin Supreme Court "refused to allow [a] plaintiff to circumvent a warranty through a tort claim, reasoning that the 'protections granted by the [UCC] are not to be buttressed by tort principles and recovery.'" *Id.* at 172 (citation omitted).

[¶18.]     Consistent with our decision in *Kreisers* and the well-reasoned decisions from other jurisdictions, we conclude that the economic loss doctrine should not be expanded beyond the UCC or product liability claims.  Because the economic loss doctrine is inapplicable to the Mays' tort claim, based entirely on First Rate's alleged negligence in the performance of its work, the circuit court erred in dismissing the case based upon that doctrine.

> b.     *Whether the economic loss doctrine applies absent privity of contract*

[¶19.]     The parties' admitted lack of privity is an additional basis for concluding that the economic loss doctrine has no application in this case.[7]  The economic loss doctrine is premised on the existence of a contractual relationship between parties, creating a right to recover in contract.  As we explained in *Kreisers*, "[t]he prohibition against tort actions to recover solely economic damages *for those in contractual privity* is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort."  2014 S.D. 56, ¶ 29, 852 N.W.2d at 421 (emphasis added) (citation omitted).  "The economic loss doctrine, therefore, sets forth that regardless of whether a tort duty may exist *between contracting parties*, the actual duty one

---

7.     First Rate, both in its briefing to the circuit court and in its appellate brief, acknowledged that there was no contract and no contractual privity between the parties.  First Rate argues, however, that the lack of privity precludes the Mays' suit against First Rate.  Where, as here, the Mays' complaint alleges only negligence, there is no requirement that the parties be in privity of contract.  Rather, the requisite elements for actionable negligence are: "(1) A duty on the part of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure."  *Blaha v. Stuard*, 2002 S.D. 19, ¶ 19, 640 N.W.2d 85, 90 (quoting *Stevens v. Wood Sawmill, Inc.*, 426 N.W.2d 13, 14 (S.D. 1988)).

party owes to another for purely economic loss should be based exclusively on the contract to which they agreed and assigned their various risks." *Id.* (emphasis added). *See also*, Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 555 (2009) (explaining that "[t]he purpose of the economic loss rule" is to ensure that the parties respect their private agreements by limiting "a plaintiff to contract remedies" when there is an existing agreement allocating economic risks, and that the rule serves no function when no contract is present between the parties).

[¶20.] "This Court has previously held that a subcontractor may proceed in a breach of contract action against the first party where the parties are in privity with one another." *C & W Enters., Inc. v. City of Sioux Falls*, 2001 S.D. 132, ¶ 14, 635 N.W.2d 752, 757. The reverse must necessarily be true. Privity of contract between a subcontractor and the first party "occurs when: (1) the subcontractor is specifically approved by the first party; and (2) the two parties owe reciprocal duties to one another under the contract." *Id.*

[¶21.] There is no claim, within the applicable standard of SDCL 15-6-12(b)(5), that a contract exists between the Mays and First Rate regarding the dirt work associated with the Mays' home. In fact, First Rate argued in its motion to dismiss that "[t]here was no contract between [the] Mays and First Rate" and the Mays had no basis for a contractual claim against First Rate. Therefore, the

economic loss doctrine, regardless of its scope, does not apply in this case and the circuit court erred by raising this defense sua sponte and determining it as it did.[8]

[¶22.]    In light of our conclusion that the economic loss doctrine does not apply to this case, as the claim raised is outside the context of the UCC, we need not consider the Mays' alternative argument that the "other property" exception to the economic loss doctrine applies.  We reverse and remand for further proceedings consistent with this opinion.

[¶23.]    JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.

---

8.    Although the court gave the parties sufficient notice and opportunity to brief the applicability of the economic loss doctrine prior to its ruling, the issue is before us only because the circuit court raised the question on its own initiative, rather than addressing the claims raised by First Rate in its motion to dismiss.  This Court has routinely stated that we must "rely on the 'parties to frame the issues for decision and assign the courts the role of neutral arbiter of matters the parties present.'" *Ally v. Young*, 2023 S.D. 65, ¶ 50, 999 N.W.2d 237, 254 (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375, 140 S. Ct. 1575, 1579, 206 L. Ed. 2d 866 (2020)).  When a court raises "issues sua sponte and participat[es] as a pseudo-advocate at . . . evidentiary hearings, the circuit court abandon[s] its post of neutrality, threatening the integrity of the very process it was tasked with protecting." *Id.* ¶ 49 n.14, 999 N.W.2d at 253 n.14.  *See also*, *Sineneng-Smith*, 590 U.S. at 375–76, 140 S. Ct. at 1579 ("[O]ur system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" (citation omitted)).  By raising this new defense on its own, the circuit court abandoned its role as a neutral arbiter and "threaten[ed] the integrity of the very process it was tasked with protecting." *Ally*, 2023 S.D. 65, ¶ 49 n.14, 999 N.W.2d at 253 n.14.